2002 SD 61

**JAMES RIVER EQUIPMENT CO., f/k/a** Brandt Equipment Co., a South Dakota Corporation, Plaintiff and Appellant,

v.

**BEADLE COUNTY EQUIPMENT, INC., a South Dakota Corporation, Defendant and Appellee.**

No. 21986.

Supreme Court of South Dakota.

Argued Jan. 9, 2002.

Decide May 22, 2002.

James E. Moore and Jennifer L. Wollman of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for plaintiff and appellant.

Rodney Freeman, Jr. and Kent A. Shelton of Churchill, Manolis, Freeman, Kludt, Shelton & Burns, Huron, South Dakota, Attorneys for defendant and appellee.

WILBUR, Circuit Judge.

[¶ 1.] James River Equipment Co. (James River), formerly known as Brandt Equipment Co., purchased an implement dealership from Beadle County Equipment, Inc. (Seller). Used equipment constituted a significant part of the transaction. After the purchase, James River discovered that the hours of usage for five combines that were part of the used equipment inventory were not as indicated by Seller. James River sued for breach of contract and breach of express warranty. A court trial was held. The trial court found no actionable warranty existed. James River appeals. We affirm in part and reverse and remand in part.

## ISSUE

[¶ 2.] **Did Seller make an express warranty? If so, did Seller breach the express warranty?**

### STATEMENT OF FACTS

[¶ 3.] On February 23, 1994, the parties entered into a written agreement for James River to purchase Beadle County Equipment for approximately $1,800,000. Ace Brandt, the principal shareholder and President of James River, negotiated and executed the agreement with Pete Mies, the President of Beadle County Equipment (Seller).

[¶ 4.] As part of the transaction, James River purchased all used equipment inventory held by Seller as of the date of the

agreement. The used equipment was valued at $1,361,000. Seller identified the used equipment inventory on a separate schedule attached to the purchase agreement as Exhibit C and incorporated by reference. Seller made various representations on Exhibit C regarding the listed equipment. Among other things, those representations included descriptions regarding the number of hours the equipment had been used.

[¶ 5.] The purchase agreement entered into between the parties provided that "[a]ll representations and warranties by Seller set forth in the Agreement shall be true and correct in all material respects as of the Closing." The agreement also provided that "Buyer acknowledges that the Purchased Assets to be purchased hereunder are being conveyed to Buyer in an 'AS IS' condition and that neither Seller nor Seller's agents or employees have made any representation to Buyer concerning the condition of the Purchased Assets, or any of them, except as specifically provided in this Agreement."

[¶ 6.] The parties gave contradictory testimony regarding whether Seller made any oral representations regarding the number of hours listed for the used equipment. After the closing on February 24, 1994, James River learned that five of the used John Deere combines had substantially more hours of use than Seller had represented in Exhibit C.

[¶ 7.] James River testified that the differences in the hours between what was represented on Exhibit C and what he actually found after closing affected the value of the combines. Seller agreed that the amount of time a machine has actually been operated as indicated by the hours of usage is a factor in determining its value.

[¶ 8.] The trial court found in favor of James River on several smaller claims which are not part of this appeal and awarded James River a total of $7,435.64 in damages. However, the trial court did not find in favor of James River on its claim for breach of express warranty.

## STANDARD OF REVIEW

[¶ 9.] The existence of an express warranty presents a mixed question of law and fact. Whether certain words were spoken or written presents a question of fact. Determining what those spoken or written words mean involves a question of law. Thus, the trial court's findings of fact are reviewed by this Court under the clearly erroneous standard. *Arnold Murray Construction, LLC v. Hicks*, 2001 SD 7, ¶ 6, 621 N.W.2d 171, 174. Pursuant to this standard, we will reverse a finding of fact only "[if] we are left with a definite and firm conviction that a mistake has been made." *Id.* (citations omitted).

[¶ 10.] "On appeal, this Court can read a contract itself without any presumption in favor of the trial court's determination." *Thunderstik Lodge, Inc. v. Reuer*, 1998 SD 110, ¶ 12, 585 N.W.2d 819, 822 (additional citations omitted). For that reason, the interpretation of contractual provisions is a question of law, which we review de novo. *Mahan v. Avera St. Luke's*, 2001 SD 9, ¶ 15, 621 N.W.2d 150, 154. *See also Icehouse, Inc. v. Geissler*, 2001 SD 134, ¶ 7, 636 N.W.2d 459, 462.

## DECISION

[¶ 11.] James River contends that the written statement of hours of usage for the five combines in question found in Exhibit C attached to the purchase agreement constitutes an express warranty by Seller. In addition, James River contends that when asked specifically about the accuracy of the hours listed on Exhibit C, Seller affirmatively asserted the hours were accurate.

[¶ 12.] The trial court resolved the factual disputes about what words were spoken in favor of Seller and found that there were no oral express warranties made by Seller regarding the hours on the combines. The trial court also found no actionable warranty in Exhibit C, the attachment to the purchase agreement.

[¶ 13.] The trial court was in the best position to gauge the credibility of witnesses regarding oral representations. The trial court resolved the factual disputes on this issue in favor of Seller. Thus, the trial court's finding that no oral representations were made by Seller will not be overturned by this Court unless we are definitely convinced a mistake has been made. James River has presented no argument regarding the trial court's finding on this issue that persuades us that a mistake has been made. Therefore, we find no error in the trial court's findings as to oral warranties or oral representations.

[¶ 14.] The primary issue is whether the written representations made by Seller in the purchase agreement constitute an express warranty. Seller contends that the attachment to the purchase agreement, Exhibit C, merely identified the used equipment to be included in the sale. Seller further states he had no intention to warrant or guarantee the accuracy of the hours stated for the equipment. In addition, Seller argues that the opportunity to inspect prevents James River from claiming Seller misrepresented the hours on the used equipment. Finally, Seller argues the "as-is" clause in the purchase agreement effectively disclaims Seller's description of the used equipment.

### 1. Purchase agreement contains express warranty

[¶ 15.] This case involves the sale of the assets of a business. The assets sold included the following fixed assets: non-John Deere parts, used equipment, other assets such as work orders, sales-in-progress, intangible personal property, customer lists, and the corporate name and goodwill.

[¶ 16.] The parties have briefed and argued the facts as if this were a sale of "goods" under Article 2 of the Uniform Commercial Code (UCC). Our decision on the express warranty issue would likely be the same utilizing either an analysis under the UCC or common law. We will analyze the breach of warranty issue in this case under the UCC.[1]

[¶ 17.] The UCC and its predecessors, including the Uniform Sales Act, as applied to express warranties, are "consistent with the common law principle which provided that the seller who affirms any fact or makes any promise concerning the goods which he or she is selling makes an express warranty, if the buyer, relying on that affirmation or promise, is induced to buy the goods." 2 Deborah L. Nelson & Jennifer L. Howicz, Williston on Sales § 15–6, at 377 (5th ed1995) [hereinafter Williston on Sales].

[¶ 18.] Under SDCL 57A–2–313(1)(a) and (b)[2], it would appear Seller

---

1. Clearly there may be circumstances where the UCC would be inapplicable to the sale of a business. We leave that discussion for another day.

2. 57A–2–313(1)(a)(b):
   (1) Express warranties by the seller are created as follows:
   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
   (b) Any description of the goods which is made part of the basis of the bargain cre-

made an affirmation of fact or offered a description of the used equipment which became a part of the agreement through the attachment, Exhibit C. Seller represented by affirmation or description that the combines described by the number of hours in Exhibit C would match those descriptions. "Statements ... [that goods] are of a certain age or year of manufacture, are express warranties. The same is true of a statement ... that the goods are not second-hand. Thus, a statement that an automobile has been driven only a few miles ... is an express warranty." 67A AmJur 2d *Sales* § 735 (1985).

[¶ 19.] Seller urged the trial court to go beyond Exhibit C to determine the nature of the agreement. Seller argues that Exhibit 2, a working copy of Exhibit C, formed the basis of the bargain and that Exhibit C was attached to the agreement "simply to provide a clean copy" because Exhibit 2 had markings on it.

[¶ 20.] On Exhibit 2, someone increased the number of hours of usage on combine # 2286L from the incorrect number, 1435 hours, to the correct number, 2040 hours, and the computer-generated price of $80,000.78 was reduced to $69,000. It is not clear who made the alterations or why or when the alterations were made.

■ [¶ 21.] Purchase agreements "may incorporate by reference another document containing technical specifications for the product, *and this will likely create an express warranty by description.*" 67A AmJur2d *Sales* § 739 (1985) (emphasis added). *See White's Elec., Heating, Air & Plumbing v. Lewis Constr. Co.*, No. 02A01–9803–CH–00064, 1999 WL 605654, at *13 (Tenn.Ct.App.1999) (stating that neither physical attachment nor specific language is necessary to incorporate a document by reference; "[t]he incorporating instrument must clearly evidence an intent that the writing be made part of the contract"); *U.S. v. Outer Harbor Dock & Wharf Co.*, 124 F.Supp. 337, 343 (S.D.Cal. 1954) (holding that a contract may refer to another contract for details or conditions and that the contract referred to must be considered as a part of the contract in which the reference was made).

■ [¶ 22.] The contract in this case makes no reference to Exhibit 2. Exhibit 2 was not attached to the contract. Therefore, the parol evidence rule prohibits consideration of Exhibit 2, which was not made part of the purchase agreement, to the extent it conflicts with Exhibit C. *See* SDCL § 57A–2–202 (stating that "[t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement[.]"). *See also Dakota Pork Industries v. City of Huron*, 2002 SD 3, ¶ 14, 638 N.W.2d 884, 886.

[¶ 23.] Exhibit C speaks for itself. *See Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 17, 575 N.W.2d 225, 232 (stating that where an agreement "speaks for itself," "[w]e are not concerned with discovering latent understandings, if to do so would controvert the terms of an unambiguous writing.").

2. Seller's intentions immaterial

■ [¶ 24.] A reading of SDCL 57A–2–313(2) [3] would indicate that whether

---

ates an express warranty that the goods shall conform to the description.

**3.** SDCL 57A–2–313(2):

It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a

Seller intended the exhibit attached to the purchase agreement to be an express warranty is irrelevant. It is generally recognized that in order to create a warranty, it is unnecessary that the Seller's representation be scrutinized as a matter of intent. Williston on Sales, *supra*, § 15–6 at 382.

> If the affirmation or the representation is unequivocal and clearly distinguishable from seller's mere puffing of the product and the buyer understands that affirmation or representation to be a warranty and relying on it buys the goods, the seller cannot at that point escape liability merely by claiming he or she had not intended to create the warranty.

*Id.*

3. Express warranty not negated by opportunity to inspect

[¶ 25.] Seller argues, and the trial court agreed in its bench decision, that James River had the opportunity to and did inspect the used equipment inventory before closing, and that opportunity and inspection negated any express warranties. The trial court relied on the case of *Roper v. Noel*, 32 S.D. 405, 143 N.W. 130 (1913). The Court in *Roper* held that, in a fraud case, an instruction should have been given instructing that a party must show that he availed himself of information existing at the time of the transaction before he can demonstrate deceit. *Id.* at 132. However, the trial court and Seller ignored the fact that this Court recognized that such an instruction should also inquire as to whether a warranty of the facts existed. *Id.*

■ [¶ 26.] Moreover, the UCC provides that whether an inspection was made of the goods to be purchased is not determinative of the existence of an *express*

warranty. UCC § 2–316(3)(b) excludes only implied warranties as to defects which examination ought to have revealed. *See also* SDCL 57A 2–316(3)(b).

> With respect to implied warranties, the Uniform Commercial Code provides that when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired, or has refused to examine the goods, there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him. But with regard to express warranties the situation is different. Under the Code, the real test of whether an express warranty exists is whether the warranty became a part of the basis of the bargain, and *the Code does not exclude an express warranty where the buyer has the opportunity for inspection, or does inspect the goods.*

67A AmJur 2d *Sales* § 699 (1985) (emphasis added)

4. The express warranty made by Seller was not disclaimed by the "as is" clause in the purchase agreement

[¶ 27.] Seller claimed that he sold the used equipment inventory to James River on an "as is" basis, and that the "as is" clause of the purchase agreement disclaimed any express warranties made. The trial court agreed in its bench decision that "there is an express provision in the agreement as well that the properties are being sold as is . . . ."

■ [¶ 28.] "Disclaimers of warranty are to be strictly construed against the seller." *Pearson v. Franklin Laboratories, Inc.*, 254 N.W.2d 133, 142 (S.D.1977) (citations omitted). *See also* 67A AmJur2d

---

warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or

commendation of the goods does not create a warranty.

*Sales* § 822 (1985) ("Warranty disclaimers under the Code are not favored and are strictly construed against the seller or manufacturer on public policy grounds.").

[¶ 29.] The UCC contemplates that only implied warranties can be disclaimed by use of "as is" clauses. The only UCC provision addressing "as is" clauses provides that "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty[.]" UCC § 2–316(3)(a); *see also* SDCL 57A–2–316(3)(a). The official comment to that section confirms its plain meaning, i.e., that "[o]nly implied—not express—warranties are excluded in 'as is' transactions." *See Tenwick v. Byrd,* 9 Ark.App. 340, 659 S.W.2d 950, 952 (1983) (citations omitted). *See also City Dodge, Inc. v. Gardner,* 232 Ga. 766, 208 S.E.2d 794, 796 (1974) ("We . . . conclude that the 'as is' language used here is ineffective to negate an express warranty." (citation omitted)); *Society Nat. Bank v. Pemberton,* 63 Ohio Misc. 26, 409 N.E.2d 1073, 1076 (1979), (holding that, while an "as is" clause in a sales agreement is normally sufficient to disclaim all implied warranties, express warranties "are not so easily withdrawn from the parties' agreement").

In view of the principle that the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell, the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller's obligation. Thus, a contract is normally a contract for a sale of something describable and described. A clause generally disclaiming "all warranties, express or implied" cannot reduce the seller's

obligation with respect to such description and therefore cannot be given literal effect under Section 2–316.

UCC § 2–313 cmt 4 (1989). Regardless, "whether implied warranties have been excluded is immaterial when the buyer sues on an express warranty." 67A AmJur2d *Sales* § 830 (1985). Therefore, the UCC does not permit "as is" clauses to disclaim express warranties.

[¶ 30.] The South Dakota Supreme Court, interpreting North Dakota's UCC provisions, which are identical to SDCL 57A–2–316, stated in *Husky Spray Service, Inc. v. Patzer,* 471 N.W.2d 146, 151 (S.D.1991):

Section 2–316 of the UCC (NDCC 41–02–33) protects buyers from disclaimers inserted into written contracts or similar forms which are inconsistent with express warranties. Thus, where an express warranty and a disclaimer of the express warranty exist in the same sale, there is an irreconcilable conflict and the disclaimer is ineffective. (citations omitted)

## CONCLUSION

[¶ 31.] Seller's written representations in Exhibit C attached to the purchase agreement about the condition and number of hours of use as to the five combines constitute an express warranty. The number of hours of usage on several of the combines was greater than promised by Seller in the contract. Therefore, Seller breached the express warranty he made in the contract regarding the number of hours of usage for the combines in question. The trial court's judgment as to breach of express warranty is reversed and this matter is remanded to the trial court for a determination of damages caused by the Seller's breach.

[¶ 32.]  GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 33.]  ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

[¶ 34.]  WILBUR, Circuit Judge, for SABERS, Justice, disqualified.