2005 SD 78

Diane M. VIRCHOW, Plaintiff and Appellant,

v.

UNIVERSITY HOMES, INC. d/b/a Happy Homes, Defendant,

and

Highland Manufacturing, Inc., Defendant and Appellee.

No. 23251.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 2005.

Decided June 22, 2005.

Kent R. Cutler and David L. Edwards of Cutler & Donahoe, Sioux Falls, South Dakota, Attorneys for plaintiff and appellant.

Clint L. Sargent of Danforth, Meierhenry & Meierhenry, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

MYREN, Circuit Judge.

[¶ 1.] Diane Virchow (Virchow) appeals from a final judgment entered following a jury trial. She contends that the trial court abused its discretion in granting directed verdicts on two of her claims against Highland Manufacturing, Inc. (Highland) and refusing to award attorney's fees under the Magnuson–Moss Warranty Act. We affirm.

## FACTS

[¶ 2.] Highland constructed a manufactured home that was sold to Virchow by University Homes, Inc., d/b/a Happy Homes (Happy Homes). The home was manufactured in 1995. It served as a model home for Happy Homes for approximately one year before it was sold to Virchow in 1996. Highland supplied a Manufacturer's Limited Warranty lasting one year. In that express warranty, Highland promised to "repair or correct without charge at the owners [sic] location any defects in material or workmanship...." The warranty required the consumer to present all claims, in writing, to the dealer who sold the home or to the service department of Highland within one year and ten days of the purchase. The windows in the home were manufactured by Carefree Windows. They were covered by Carefree Window's limited warranty lasting one year from installation for the frames and hardware and five years from the date of consumer purchase for the sealed insulating glass.

[¶ 3.] Virchow provided both Happy Homes and Highland with many letters regarding numerous complaints she had with the home. Highland sent contractors to the home to address those complaints. The warranty period expired on October 31, 1997. Highland continued to provide warranty services through February of 1998. Highland received no other re-

quests for warranty service from Virchow after February 1998.

[¶ 4.] In October 1999 Virchow filed suit against Happy Homes and Highland. Virchow accepted $15,000 to settle her claims against Happy Homes. This concluded Happy Homes' involvement in the case.

[¶ 5.] Virchow's claims against Highland were presented to a jury on February 11 and 12, 2004. At the conclusion of the presentation of evidence, the trial court granted Highland's request for directed verdicts relating to Virchow's express and implied warranty claims regarding the windows of the home. The court ruled that Virchow had not provided written notice of any problem with the windows leaking. The court also ruled that Virchow had not presented any substantial evidence that Highland was responsible for any problems with the functioning of the windows. The jury returned a verdict in favor of Virchow in the total amount of $2,500 on all other claims.

[¶ 6.] Prior to trial the trial court ruled that, under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310, a plaintiff that prevails on a warranty claim involving the sale of a manufactured home could recover reasonable attorney's fees and costs. Following trial, Virchow filed a request for attorney's fees and costs in the amount of $35,794.41. The court considered a number of factors and concluded that Virchow was not entitled to recover any attorney's fees.

## STANDARD OF REVIEW

[¶ 7.] We review a trial court's ruling on a motion for directed verdict under the abuse of discretion standard:

A motion for directed verdict under SDCL 15-6-50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse.

*In re Estate of Holan*, 2001 SD 6, ¶ 9, 621 N.W.2d 588, 590–91 (quoting *Bland v. Davison County*, 1997 SD 92, ¶ 26, 566 N.W.2d 452, 460) (citation omitted).

## ANALYSIS

[¶ 8.] Virchow asserted that the windows of the home were faulty in two respects. She claimed they did not function properly because they were difficult to open and close. She also claimed that they leaked. She claimed damages under Highland's manufacturer's warranty and under an implied warranty of fitness for a particular purpose.

### I. Manufacturer's warranty (express warranty)

[¶ 9.] "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." SDCL 57A–2–313.

In order to recover money damages for a breach of express warranty one must prove:

(1) an affirmation of fact or promise made by the seller to the buyer relating to the goods;

(2) such affirmation of fact or promise became a part of the basis of the bargain;

(3) that the injured party, in making the purchase, relied on the representations, affirmations of fact or promises;

(4) that the goods sold by the seller failed to comply with the promises or affirmations of fact made by the seller;

(5) that the buyer, because of such failure, was financially injured; and

(6) that such failure to comply was a proximate cause of the financial injury suffered by the buyer.

*Schmaltz v. Nissen,* 431 N.W.2d 657, 660–61 (S.D.1988) (quoting *Swenson v. Chevron Chemical Co.,* 89 S.D. 497, 234 N.W.2d 38 (1975)).

### a. Leaky windows—express warranty

■ [¶ 10.] Under the express warranty, Highland promised to repair or correct *"any defects in material or workmanship."* The warranty required Virchow to provide written notice of any warranty claim within one year and ten days of the purchase.

■ [¶ 11.] At trial Virchow contended that the windows leaked. She wrote several multi-page lists to Highland detailing numerous problems regarding her home. In her detailed lists she included such items as a cracked tile in the kitchen and a gouge in the trim around the front door. None of those lists contained any mention that the windows were leaking. Virchow's counsel admitted that she had not provided written notice that the windows were leaking. Virchow presented no evidence of any written notice to Highland that the windows were leaking. Virchow did note that the windows did not open and close smoothly. There is no dispute that Highland had written notice that there were problems with how the windows opened and closed.[1] Informing the home manufacturer that the windows do not open and close smoothly does not provide notice that the windows are leaking. A warrantor cannot be expected to fix problems of which it has no notice.

[¶ 12.] Virchow argues that this Court has previously held that verbal notice is sufficient under the Uniform Commercial Code and cites *Carlson v. Rysavy,* 262 N.W.2d 27 (S.D.1978). Virchow ignores one vital fact that was not present in *Carlson.* Highland's express warranty specifically required written notice. Because Virchow failed to present any evidence that she had provided Highland with written notice that the windows leaked, the trial court directed verdict against her on that claim. This decision is consistent with the evidence in the record and was not an abuse of discretion.

### b. Window function—express warranty

■ [¶ 13.] As noted earlier, Virchow provided written notice to Highland that some of her windows did not operate smoothly. Highland did not promise to fix every problem that ever arose with this manufactured home. It promised to fix or repair any defects in material or workmanship. In order to recover under that express warranty, Virchow had to establish that the problem with the operation of her windows was a defect in material or workmanship.

[¶ 14.] The mere fact that the windows did not open and close smoothly does not, by itself, establish that there was a defect in material or workmanship. Virchow did not present any evidence that tended to

---

1. Virchow's exact complaint regarding the windows read: "The larger windows through out [sic] my home do not open/close or stay open properly. At our inconvenience we have discovered this when we wanted clean fresh air on a hot summer's night."

show why the windows did not operate correctly. Virchow did not present any evidence that tended to show that the windows did not open and close smoothly because they were not manufactured or installed correctly.

[¶ 15.] There was testimony presented at the trial that manufactured homes do not use the same quality of windows used in traditional stick-built homes. There was testimony that there are industry standards relating to the quality of products used in manufactured homes. There was no evidence that the windows in Virchow's house were of such poor quality that they failed to meet industry standards. Nor was there any testimony that the problems with operation of Virchow's windows were the result of inherently poor quality.

[¶ 16.] There was testimony that there are industry standards concerning how windows are installed in manufactured homes. There was no evidence that the windows in Virchow's home were not installed in accordance to industry standards.

[¶ 17.] The only evidence that might explain the problems with the functioning of the windows was testimony that during delivery and setup by Happy Homes, the home suffered some type of accident that caused an iron support beam to be bent. As the trial court noted, based on the evidence presented, the only way a jury could conclude that the problems with window function were a defect in material or workmanship was to speculate as to the reason the windows did not work.

[¶ 18.] The trial court granted the request for directed verdict after concluding that there was no substantial evidence to establish that the problem with the functioning of the windows was a defect in materials or workmanship for which Highland was responsible under the terms of its express warranty. This decision is consistent with the evidence in the record and was not an abuse of discretion.

## II. Implied Warranty of Fitness for Purpose

Warranties are either express or implied. An implied warranty arises under certain circumstances by operation of law and are [sic] intended to hold vendors to a course of fair dealing. "Implied warranties do not rest upon any supposed agreement in fact. They are obligations which the law raises upon principles foreign to the actual contract; principles which are strictly analogous to those upon which vendors are held liable for fraud. It is for the sake of convenience, merely, that this obligation is permitted to be enforced under the form of a contract."

*Waggoner v. Midwestern Development, Inc.,* 83 S.D. 57, 64, 154 N.W.2d 803, 807 (1967).

[¶ 19.] Virchow also claimed damages under an implied warranty of fitness for a particular purpose. Again, she contended that the windows leaked and did not function properly.

[¶ 20.] SDCL 57A–2–315 provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under § 57A–2–316 an implied warranty that the goods shall be fit for such purpose.

[¶ 21.] When an implied warranty of fitness for purpose is created, the seller must deliver a product that is fit for the purpose for which it is intended. A perfect product is not required. *Waggoner,* 83 S.D. at 68, 154 N.W.2d at 809. Prod-

ucts vary in the quality of their materials and the quality of their construction. The person asserting a violation of the warranty of fitness for a particular purpose must present sufficient evidence, direct or circumstantial, to permit the inference that the product was defective when it left the manufacturer's possession or control. *Schmaltz v. Nissen,* 431 N.W.2d 657, 663 (S.D.1988); *Pearson v. Franklin Labs., Inc.,* 254 N.W.2d 133 (S.D.1977).

*a.  Leaky windows—implied warranty*

[¶ 22.] Virchow did not present significant evidence that tended to show that the windows in her home were not fit for their intended purpose. There are many reasons a window could begin to leak. The mere fact that windows in a home begin to leak does not, by itself, establish that the home or the windows were not fit for the purpose for which they were intended at the time they were sold. It is conceivable that an intervening factor was the cause of the leaky windows. There was no substantial evidence that the windows were of such poor quality or construction that they did not fit the purpose of serving as windows. There was evidence that the windows met industry standards in quality and installation. There was no substantial evidence that Highland failed to properly install the windows.[2] Evidence was presented that the leaking may have been caused by Happy Homes' failure to complete post-delivery caulking as required in the delivery and setup instructions.

[¶ 23.] After considering all of the evidence presented at trial, the trial court

concluded that Virchow had failed to present any substantial evidence that would tend to establish that the windows leaked because of some defect present at the time the home left Highland's possession or control. This decision is consistent with the evidence in the record and was not an abuse of discretion.

*b.  Window function—implied warranty*

[¶ 24.] At best the evidence presented at trial established that the windows were difficult to open and close. The mere fact that a window is difficult to open and close does not, by itself, render it unfit for its intended purpose. There was no evidence that the windows were of such poor quality that they were not fit for their intended purpose. There was no evidence that Highland installed the windows in such a way as to render them unfit for their intended purpose. Highland presented evidence that the home had been dropped or slid during delivery by Happy Homes. There was testimony that this could have caused a misalignment resulting in the poor operation of the windows.

[¶ 25.] The trial court's decision to direct verdict was consistent with the evidence in the record and not an abuse of discretion.

## ATTORNEY'S FEES—MAGNUSON-MOSS WARRANTY ACT

[¶ 26.] The Magnuson–Moss Warranty Act (15 U.S.C. § 2301 et seq.) (Act) gives a trial court discretion to award attorney's fees and costs that have been reasonably incurred by a consumer who prevails in a warranty enforcement action. 15 U.S.C. at § 2310(d)(2)[3]. The Act spe-

---

**2.** Homebuilder Mike Robbins testified about the value of house wrap and taping of windows. However, he was unable to testify that the windows were not installed properly. As he explained, "There's no way of knowing personally myself without actually taking a

window out and seeing how the window was sealed to the exterior sheeting of the house." He testified that he did not do so.

**3.** 15 U.S.C. § 2310 provides, in pertinent part:

cifically gives the trial court discretion not to award attorney's fees if the trial judge determines that such award would be inappropriate. *Id.*

[¶ 27.] The trial court determined that it would not be appropriate to award attorney's fees for several reasons. First, it concluded that Virchow had not truly prevailed as envisioned by the Act. Virchow pursued several causes of action and succeeded on only one. In opening arguments her counsel informed the jury that she was seeking $35,000 to $50,000 in damages. She received a verdict for $2,500. Second, Highland contacted Virchow's attorney before trial to offer settlement over $15,000, but was informed that no offers under $30,000 would be considered. Virchow declined all offers from Highland and proceeded to trial. The jury awarded her $2,500. Third, the trial court determined that her request for over $35,000 in attorney's fees and costs was not reasonable in relation to the amount actually recovered. Fourth, the trial court noted that some of the attorney's fees expense had been incurred in preparing the claim against Happy Homes and concluded that there was no reasonable allocation of the fees between those two cases.

[¶ 28.] A party may be awarded attorney's fees without prevailing on all causes of action. *Alvine v. Mercedes–Benz of North America,* 2001 SD 3, ¶ 25, 620 N.W.2d 608, 613. The Magnuson–Moss Act gives the trial judge discretion to award attorney's fees in a manner consistent with the purpose and goals of the Act. The trial court exercised that discretion. The decision is based on reason and logic and does not constitute an abuse of his discretion.

[¶ 29.] Affirmed.

[¶ 30.] GILBERTSON, Chief Justice, SABERS, KONENKAMP and ZINTER, Justices, concur.

[¶ 31.] MYREN, Circuit Judge, for MEIERHENRY, Justice, disqualified.

(d) Civil action by consumer for damages, etc.; jurisdiction; recovery of costs and expenses; cognizable claims
(1) Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—
(A) in any court of competent jurisdiction in any State or the District of Columbia; or
(B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.