KONENKAMP, Justice.
[¶ 1.] Plaintiff was injured when a sports product manufactured by defendant malfunctioned and struck her arm. She brought suit against defendant alleging negligence, strict liability (defective design), and strict liability (failure to warn). Defendant moved for summary judgment on all claims and also sought to prohibit the testimony of her proposed expert witness. On finding that plaintiffs expert was not qualified to testify that the instructions provided with defendant’s product were inadequate, the circuit court excluded the testimony. The court then granted defendant’s motion for summary judgment, ruling that, without expert testimony, plaintiff had insufficient evidence to meet her burden of proof on all her claims. On appeal, we conclude that because the circuit court set the bar too high in determining the admissibility of the expert’s opinion, it should not have been excluded, and thus plaintiffs failure to warn claims may be able to proceed. We affirm in part, reverse in part, and remand.
I.
[¶ 2.] On April 12, 2001, Kylie Burley, a high school athlete, was injured in her school hallway while using a training device her coaches provided. It is called the Overspeed Trainer, manufactured and sold by Kytec Innovative Sports Equipment, Inc. The purpose of the Overspeed Trainer is to help improve a runner’s speed. The device can be used for either resistance or speed training. It requires two athletes to use, one, called the pacer, and the other, the sprinter. The sprinter wears a belt with a single release hook, and the pacer wears a belt equipped with a single swivel hook. A cord connects the two runners. The cord is tied to a post or other anchor. It is then extended through a pulley on the back of the belt worn by the pacer through to the rope end ring, which is attached to a release hook on the belt worn by the sprinter. The cord has a Velcro connection, termed a “ripcord,” which, according to the provided instructions, “will break loose and release the [sjprinter if the pull becomes too greatf.]”
[¶ 3.] After the cord and belts are in place, the pacer and the sprinter begin to run in the same direction, in either the same lane or two separate lanes, but the pacer is ahead of the sprinter. The pacer is to run faster than the sprinter, in effect pulling the sprinter to keep up and thereby increasing the sprinter’s speed. According to the instructions, “[t]he rope will automatically release from the Sprinter when the Pacer slows down or reaches the stopper ring (located 5 meters from the end ring; You’ll see how it works when you walk through it the first time.).” Also, the instructions indicate that the sprinter can release herself “with a quick chop downward to the tow line.”
[¶ 4.] Burley was using the Overspeed Trainer under the direction of her West Central High School track coach, Darrell Horacek. Horacek and assistant track coach, Denise Kennedy, introduced the brand new Overspeed Trainer for the first time the day Burley was injured. Before letting the students use the device, Hora-cek and Kennedy read the product’s instructions and attempted to assemble it. Horacek found that the instructions were of no help. However, because Kennedy *401 had experience using a similar device while on the University of South Dakota’s track team, and Horacek had used one during a training weekend at the University, the two attempted to prepare the Overspeed Trainer for the students’ use. After Hora-cek assembled it, he attempted to use it to see if it would release as the instructions indicated. He noticed that the hook on the sprinter’s belt would rotate downward, thereby “making it virtually impossible for a ‘downward chop’ to release the hook and ring.” Because the downward chop was a means of releasing the sprinter from the pacer’s pull, Horacek decided to bend the hook just enough to make it easier for the ring to release. He bent the hook by using pliers and then tried using the device again. This time he believed that the hook and ring released appropriately after he applied the downward chop. He offered the Overspeed Trainer for use to both the girls’ and boys’ track teams.
[¶ 5.] After the boys used it, Burley was one of the first girls to try the device. Details of the accident are not entirely clear from the record. Burley recalled that she was injured when her arm was struck from behind by the ring that was supposed to be attached to the sprinter’s belt. Horacek believed that the ring broke free, recoiled, and then hit Burley. The impact of the ring fractured the ulna bone in her left arm, requiring surgery and the implantation of a metal plate with screws.
[¶ 6.] Burley brought suit against Ky-tec, alleging that the company was negligent in its warnings, design, and construction of the Overspeed Trainer. She also alleged that because of the defective design and failure to warn, Kytec was strictly hable for her injuries. Kytec brought a third-party complaint against West Central School District for indemnity and contribution.[1] Dr. Jan Berkhout of the University of South Dakota was retained as an expert solely for Burley’s failure to warn claims. Burley sought to offer an opinion from Dr. Berkhout that the instructions included with the Overspeed Trainer were “seriously deficient.” Kytec moved to exclude this expert testimony and also sought summary judgment on all claims.
[¶ 7.] According to Kytec, Dr. Berkh-out lacked the knowledge, skill, experience, training, or education necessary to render an expert opinion in this case. See SDCL 19-15-2 (Rule 702). In its memorandum decision, the circuit court concluded that Dr. Berkhout’s proposed testimony would provide “the trier of fact with relevant evidence that would assist them in determining whether the instructions [were] deficient.” [2] However, the court found that Dr. Berkhout was not qualified to offer an expert opinion about whether the instructions accompanying the Overspeed Trainer were inadequate or improper.
[¶ 8.] Dr. Berkhout is a professor of Psychology and the Director of the Heims-tra Human Factors Laboratory at the University of South Dakota. He has a degree in physiology and biopsychology from the University of Chicago, obtained in 1962, and since 1993 is certified as a professional ergonomist by the Board of Certification of *402 Professional Ergonomists. Nonetheless, the circuit court concluded that “Dr. Berkhout has not received any specified training or education related to product instruction,” does not have “expertise on questions of display, syntax and emphasis[,]” and has no “personal experience writing or evaluating warning labels for athletic equipment.” Accordingly, the court granted Kytec’s motion to exclude Dr. Berkhout’s testimony.
[¶ 9.] The court then addressed Kytec’s motion for summary judgment. In her complaint, Burley alleged that Kytec “negligently designed and manufactured the Overspeed Trainer.” But she offered no expert testimony to assist the trier of fact in determining whether the product was defectively manufactured or designed or whether the actions of Kytec in designing and manufacturing the product were reasonable under the circumstances. The court held that for this claim expert testimony was necessary.
[¶ 10.] As to Burley’s claim alleging that Kytec was strictly liable for her injuries because the device “was in a defective condition and was unreasonably dangerous,” the court similarly concluded that expert testimony was necessary. In the court’s words, “it cannot be said that common experience tells us that Burley’s injuries could not have occurred absent a defect in the Overspeed Trainer, and Burley has failed to negate other causes of her injuries, namely user error or product modification.”
[¶ 11.] Finally, the court examined Burley’s last claim that Kytec was hable for its failure to provide adequate warnings of the dangers of the Overspeed Trainer. Because the court had excluded Dr. Berkhout’s testimony, the question became whether she could proceed without expert opinion. After identifying the elements necessary for her to prevail on the claims for inadequate warnings, the court held that “Burley has not presented this court with any evidence indicating that it would be able to meet its burden with respect to all those elements.” Thus, all her negligence and strict liability claims were dismissed. Burley appeals.
II.
[¶ 12.] We review a circuit court’s decision to admit or deny an expert’s testimony under the abuse of discretion standard. State v. Guthrie, 2001 SD 61, ¶ 30, 627 N.W.2d 401, 414-15 (internal citations omitted); see also State v. Edelman, 1999 SD 52, ¶4, 593 N.W.2d 419, 421 (citing State v. Bachman, 446 N.W.2d 271, 275 (S.D.1989)); Zens v. Harrison, 538 N.W.2d 794, 795 (S.D.1995) (citations omitted); State v. Logue, 372 N.W.2d 151, 156 (S.D.1985) (citations omitted). “Although we have repeatedly invoked stock definitions, the term ‘abuse of discretion’ defies an easy description. It is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.” Arneson v. Arneson, 2003 SD 125, ¶ 14, 670 N.W.2d 904, 910 (citation omitted.).
[¶ 13.] Admissibility of expert testimony is governed by SDCL 19-15-2 (Rule 702). Under this rule, before a witness can testify as an expert, that witness must be “qualified.” Id. Furthermore, “[u]nder Daubert, the proponent offering expert testimony must show that the expert’s theory or method qualifies as scientific, technical, or specialized knowledge” as required under Rule 702. Guthrie, 2001 SD 61, ¶ 34, 627 N.W.2d at 415-16; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993). Before admitting expert testimony, a court must first determine that such qualified testimo *403 ny is relevant and based on a reliable foundation. Guthrie, 2001 SD 61, ¶ 32, 627 N.W.2d at 415. The burden of demonstrating that the testimony is competent, relevant, and reliable rests with the proponent of the testimony. SDCL 19-9-7 (Rule 104(a)). The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. Daubert, 509 U.S. at 592 n. 10, 113 S.Ct. at 2796 n. 10, 125 L.Ed.2d 469 n. 10. “Relevance embraces ‘evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.’” Guthrie, 2001 SD 61, ¶32, 627 N.W.2d at 415 (quoting SDCL 19-12-1).
[¶ 14.] In this case, Burley offered Dr. Berkhout as an expert only on her claims pertaining to warnings and instructions. The circuit court found that Dr. Berkhout’s proposed testimony was relevant under Daubert, as it “would assist [the trier of fact] in determining whether the instructions are deficient.” However, it determined under Rule 702 that he was “not qualified to offer expert testimony in this case” even though he has “impressive credentials and expertise in a variety of areas[.]” Specifically, the court reasoned:
Dr. Berkhout testified that he has never been previously retained as an expert witness for inadequate warnings or improper instructions.... Dr. Berkhout was unfamiliar with the American National Standards Institute (ANSI), and therefore unfamiliar with the ANSI guidelines for warnings.... Dr. Berkh-out has not received any specified training or education related to product instructions, and while formalized training is not a prerequisite for admission under SDCL 19-15-2 [ (Rule 702) ], Burley has not demonstrated that Dr. Berkhout is qualified experientially. Dr. Berkhout has never personally drafted warnings or instructions for any device[,] much less a devise similar to the Overspeed Trainer.
Further, the court stated that “relevant case law emphasizes that a warnings expert should demonstrate expertise in the specific field in question” and “Dr. Berkh-out testified that he does not have any particular expertise in athletic training products, in the training of track athletes, or the training of athletes of any kind.”
[¶ 15.] According to Burley, on the other hand, Dr. Berkhout is more than qualified to render an expert opinion that the instructions for the Overspeed Trainer were deficient. In particular, she contends that Dr. Berkhout, as a certified ergonomist, studies “the interface and relationship between products and the users of such products,” and “warnings and instructions that accompany such a product are integral to the endeavor.”[3] Moreover, she avers that he “teaches graduate and doctoral level classes at the University of South Dakota specifically on instructions and warnings.” Burley believes that the *404 circuit court “wrongly focused on the athletic nature and purpose of the equipment, and wrongly required that Dr. Berkhout have some level of expertise in the realm of athletic equipment and with athletics in general.” Instead, she contends that Dr. Berkhout’s experience with athletics or athletic training should go more to the weight of his opinion, rather than to its admissibility.
[¶ 16.] A trial court is responsible for deciding whether an expert’s knowledge will “assist the trier of fact to understand the evidence or to determine a fact in issue,” under Rule 702. SDCL 19-15-2; see also Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir.2001) (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 156, 119 S.Ct. 1167, 1178, 143 L.Ed.2d 238 (1999)). And that responsibility includes determining “whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case.” Wheeling Pittsburgh Steel Corp., 254 F.3d at 715 (citation omitted).
[¶ 17.] In examining the circuit court’s decision on Dr. Berkhout’s qualifications, we find several problems in the court’s analysis. To conclude, as the court did, that because Dr. Berkhout had “never been previously retained as an expert witness for inadequate warnings or improper instructions,” he was therefore not qualified to testify means that no one could qualify as an expert for the first time in our courts without having first qualified somewhere else. Mere experience as a practiced litigation witness is a poor touchstone for measuring genuine expert qualifications. See First Western Bank Wall v. Olsen, 2001 SD 16, ¶9, 621 N.W.2d 611, 615-16 (expert’s qualifications should not be examined under a “restricted focus”).
[¶ 18.] A questionable inference can also be seen in the circuit court’s statement that “Dr. Berkhout was unfamiliar with the American National Standards Institute (ANSI), and therefore unfamiliar with the ANSI guidelines for warnings.” Although this may perhaps demonstrate limitations in his general knowledge of the field, neither the court nor counsel for Kytec cited a single ANSI standard that might conceivably apply in this case. How can an expert witness be disqualified for being unfamiliar with standards not shown to be relevant?
[¶ 19.] Another reason cited by the circuit court in finding Dr. Berkhout less than qualified was the fact that he “has not received any specified training or education related to product instructions^]” However, Dr. Berkhout has himself taught graduate level courses dealing with instructions and warnings. These include a course on the psychology of safety, with planning for warnings and instructions, and a course covering the comprehensibility and readability of instructions, labels, and signs. Reading, study, and practice can be a source of education and knowledge sufficient to qualify a person as an expert. See John W. Strong, McCormick on Evidence, § 13, 24 (5th ed. 1999).
[¶20.] Despite what the circuit court conceded were “impressive credentials and expertise in a variety of areas,” Dr. Berkh-out was found “not qualified to offer expert testimony in this case.” The court relied on Robertson v. Norton Co., 148 F.3d 905, 907 (8th Cir.1998), a case in which an expert “was undoubtedly qualified to testify about a manufacturing defect in an exploding ceramic grinding wheel,” but was deemed not qualified to testify on grinding wheel warnings. The court ruled that the expert’s “knowledge of ceramics would not *405 provide the expertise on ‘questions of display, syntax, and emphasis’ that the jury would expect from a bona fide warnings expert.” Id. There, the expert’s “formal education in warnings consisted of a college entry-level psychology course.” Id. at 907 n. 1. And his only “relevant qualifications were past membership in the Human Factors Society and limited experience looking at literature and drafting warnings for a coal gasification facility.” Id. As in our case, the expert was also unfamiliar with the ANSI guidelines.
[¶ 21.] In contrast, Dr. Berkhout has had considerable experience in the evaluation of instructions and warnings. He published articles on the uses of computer assisted instruction in developing psycho-motor skills related to heavy machinery operation; computer assisted instruction in applying psychomotor skill development; and the development of flight control skills in children. He has worked with companies in developing techniques for comparing the effectiveness of various vehicle signal and warning systems and the study and review of highway signage. He has also acted as a consultant in litigation on warnings and instructions on a tire and tire mounting machinery. He has supervised several doctoral dissertations on such subjects as evaluating operating manuals for snowplows and dump trucks, food nutrition labels, and the effect of instruction sets on performance on simulated navy ship operating systems. Apropos to this case, he is presently overseeing and directing a research project on manufacturer instructions for assembling and safely using tree stands for hunting. Under this study, three test groups of subjects are given different assembly instructions and monitored to measure which instructions provide improved assembly time and quality. These qualifications plainly differ with the deficiencies the court found in Robertson.
[¶22.] Another case the circuit court found persuasive was Pearson v. Young, an unreported federal district court decision, found at 2002 WL 32026157 (W.D.Okla.). There, the expert offering opinion testimony on the adequacy of a warning for a forklift was a registered professional engineer, with a Bachelor of Science degree in Mechanical Engineering and a Master of Science in Management. Id. His only exposure to the subject of product warnings was his own attempt to draft a proposed warning for the product in the same litigation he was called to testify in. Id. Unlike Dr. Berkhout, he had done no testing and had never spoken to the individuals involved in the accident. See id. Here, Dr. Berkhout reviewed the depositions of Burley and Coach Horacek and then tested the Overspeed Trainer using Kytec’s instructions.
[¶23.] It is true, as the circuit court pointed out, Dr. Berkhout had no experience in drafting or evaluating instructions and warnings for sports equipment. However, we believe a person with his credentials and experience in the field of product instructions and warnings had the qualifications to render opinions beyond the narrow scope of sports equipment. Even with the considerable deference the abuse of discretion standard requires, on full consideration of the record, excluding Dr. Berkhout’s testimony was an abuse of discretion. The circuit court set the bar too high.
[¶ 24.] “ ‘We interpret our rules of evidence liberally with the “general approach of relaxing the traditional barriers to “opinion” testimony.” ’ ” Guthrie, 2001 SD 61, ¶ 36, 627 N.W.2d at 416 (quoting Daubert, 509 U.S. at 588, 113 S.Ct. at 2794, 125 L.Ed.2d 469 (citations omitted)). *406 See also SDCL 19-9-2 (Rule 102).[4] A party who offers expert testimony is not required to prove to a judge in a Daubert hearing that the expert’s opinion is correct: all that must be shown is that expert’s testimony rests upon “good grounds, based on what is known.” Daubert, 509 U.S. at 590, 113 S.Ct. at 2795, 125 L.Ed.2d 469 (internal quotation marks omitted). Any other deficiencies in an expert’s opinion or qualifications can be tested through the adversary process at trial. Accordingly, we reverse the circuit court’s decision to exclude Dr. Berkhout’s opinion testimony based on his qualifications.
[¶ 25.] The purpose of a Dau-bert hearing is to determine whether the offered “expert testimony both rests on a reliable foundation and is relevant to the task at hand.” Daubert, 509 U.S. at 597, 113 S.Ct. at 2799, 125 L.Ed.2d 469. Although the circuit court ruled that Dr. Berkhout’s opinion passed Daubert’s relevancy prong, and we now set aside its ruling on his qualifications, the court never reached Daubert’s reliability prong. Daubert sets out a number of nonexclusive factors for determining whether scientific evidence is reliable. 509 U.S. at 592-95, 113 S.Ct. at 2796-98, 125 L.Ed.2d 469. A court has “ ‘considerable leeway’ in deciding in each case ‘how to go about determining whether particular expert testimony is reliable.’ ” Wells v. Howe Heating & Plumbing, Inc., 2004 SD 37, ¶ 16, 677 N.W.2d 586, 592 (quoting Kumho, 526 U.S. at 152, 119 S.Ct. at 1176, 143 L.Ed.2d 238). “[N]o single factor disposes of a reliability inquiry.” See Daubert, 509 U.S. at 592-95, 113 S.Ct. at 2796-98, 125 L.Ed.2d 469. Daubert’s criteria are flexible guidelines that cannot be applied identically over a broad spectrum of disciplines. Indeed, “ ‘the measure of intellectual rigor will vary by the field of expertise and the way of demonstrating expertise will also vary.’ ” United States v. Conn, 297 F.3d 548, 556 (7th Cir.2002), cert. denied, 538 U.S. 969, 123 S.Ct. 1767, 155 L.Ed.2d 526 (2003) (quoting Tyus v. Urban Search Mgmt., 102 F.3d 256, 263 (7th Cir.1996), cert. denied, 520 U.S. 1251, 117 S.Ct. 2409, 138 L.Ed.2d 175 (1997)). We remand to the circuit court to examine and rule on the reliability question.
III.
[¶ 26.] We next consider whether the circuit court properly granted summary judgment on all of Burley’s claims. In reviewing whether summary judgment was properly granted, “we decide only whether there were genuine issues of material fact and whether the law was correctly applied.” Toben v. Jeske, 2006 SD 57, ¶ 9, 718 N.W.2d 32, 35 (quoting Heib v. Lehrkamp, 2005 SD 98, ¶ 19, 704 N.W.2d 875, 882 (citing SDCL 15-6-56(c); Keystone Plaza Condominiums Ass’n v. Eastep, 2004 SD 28, ¶ 8, 676 N.W.2d 842, 846)). Burley first alleged that Kytec was negligent because it defectively designed or manufactured the Over-speed Trainer. The court dismissed this claim because Burley failed to present expert testimony to explain “how a reasonable manufacturer could have designed *407 and/or manufactured a safer alternative.”[5] Burley responds that “Kytec’s own testimony conclusively establishes liability” for her claim. She relies on Kytec’s admission that it never tested the Overspeed Trainer or any of its component parts before distributing the product. Burley contends that Kytee also conceded that if the hook were bent, the Overspeed Trainer would be unsafe. Therefore, she argues that for this claim no expert testimony is necessary.
[¶ 27.] To establish liability in negligence for defective product design or manufacture, a plaintiff must show that the defendant failed to use the amount of care in designing or manufacturing the product that a reasonably careful designer or manufacturer would use in similar circumstances to avoid exposing others to a foreseeable risk of harm. Restatement Second of Torts § 395. To determine whether the designer or manufacturer used reasonable care, one must balance what the designer or manufacturer knew or should have known about the likelihood and severity of potential harm from the product against the burden of taking safety measures to reduce or avoid the harm. Id.
[¶ 28.] “Whether a manufacturer knew or should have known of a particular risk involves technical issues which do not easily admit to evidentiary proof and which lie beyond the comprehension of most jurors.” Peterson v. Safway Steel Scaffolds Co., 400 N.W.2d 909, 913 (S.D.1987). In particular, a plaintiff must set forth sufficient evidence establishing a causal connection between the design defect and the resulting injury. Shaffer v. Honeywell, Inc., 249 N.W.2d 251, 256 (S.D.1976), overruled on other grounds, First Premier Bank v. Kolcraft Enterprises, Inc., 2004 SD 92, 686 N.W.2d 430. “We do not require that plaintiff eliminate all other possible explanations of causation that the ingenuity of counsel might suggest.” Id. A plaintiff need only negate misuse of the product. Id. However, unless it is patently obvious that the accident would not have happened in the absence of a defect, a plaintiff cannot rely merely on the fact that an accident occurred. Id. It is not within the common expertise of a jury to deduce merely from an accident and injury that a product was defectively designed.
[¶ 29.] Burley argues that Kytee should have tested the product, and thus, should have known that the hook was bendable. However, Burley has not presented any evidence that even if the hook was bendable that such condition made the product defective. Moreover, it is undisputed that Horacek altered the design of the Over-speed Trainer before Burley’s injury. Therefore, even if the bendability of the hook arguably created a defect or dangerous condition in the product, expert testimony is needed to explain to the jury how the design of the Overspeed Trainer, not Horacek’s alteration, proximately caused Burley’s injuries. See Caldwell v. John Morrell & Co., 489 N.W.2d 353 (S.D.1992) (expert testimony is required when the issue falls outside the common experience of a jury).
[¶ 30.] Indeed, expert testimony is ordinarily required to establish a claim of negligence in a products liability action. Dancy v. Hyster Co., 127 F.3d 649, 654 (8th Cir.1997). Applying Arkansas law, the Eighth Circuit Court of Appeals in Dancy held that “absent expert testimony, there is no basis for the jury to evaluate the *408 actions of an ordinarily prudent person .... ” Id. (citation omitted); see Anderson v. Raymond Corp., 340 F.3d 520, 524-25 (8th Cir.2003) (reaching the same decision and upholding summary judgment for claims of negligence, strict liability, and failure to warn due to lack of expert testimony under Arkansas law); Erling v. American Allsafe Co., 230 F.3d 1362 (8th Cir.2000) (unpublished) (upholding summary judgment on negligent failure to warn, negligent design, and strict liability claims because of lack of expert testimony under North Dakota law).
[¶ 31.] A manufacturer’s duty to test and inspect traditionally does not give rise to an independent cause of action for products liability.[6] Rather, the plaintiff must prove, among other things, that because of the manufacturer’s failure to test and inspect, the accident occurred. Here, it is outside the common experience and capability of a jury to determine (1) that the possibility a user could bend the hook made the Overspeed Trainer defective, (2) if Kytec would have tested or inspected the Overspeed Trainer, it would have learned that the hook was bendable, and (3) whether the alteration of the product by Horacek or Kytec’s failure to test and inspect was a proximate or legal cause of Burley’s injuries. Thus, with respect to Burley’s negligent defective design and manufacture claim, expert testimony was required, and therefore, the circuit court properly granted summary judgment.
[¶ 32.] In her next claim, Burley alleges that Kytec is responsible under a theory of strict liability (defective design). Strict liability arises when a manufacturer “sells any product in a defective condition unreasonably dangerous to the user or consumer....” Peterson, 400 N.W.2d at 912 (citations omitted). “It is the unreasonableness of the condition of the product, not of the conduct of the defendant, that creates liability.” Id. (citing Jackson v. Coast Paint & Lacquer Co., 499 F.2d 809 (9th Cir.1974)). Unlike in a negligence claim, a defendant cannot avoid liability simply because at the time of production it did not know or could not have known of the product’s dangerous proclivities. See id. However, to establish a claim for strict liability (defective design), Burley must prove that the Overspeed Trainer “was in a dangerous and defective condition when it left the manufacturer.” See Engberg v. Ford Motor Co., 87 S.D. 196, 205, 205 N.W.2d 104, 109 (1973). Further, under SDCL 20-9-10, “[n]o manufacturer ... of a product may be held liable for damages for personal injury, ... sustained by reason of the doctrine of strict liability in tort based on a defect in a product ... *409 where a proximate cause of the injury ... was an alteration or modification of such productf.]” Therefore, Burley also has the burden of establishing an evidentiary basis for the proximate or legal cause element of her claim.
[¶ 33.] As with her negligence claim, Burley contends that because Kytec knew that the Overspeed Trainer would be unsafe if the hook were bent, it should have designed a product “with a hook that would withstand attempts to bend it.” According to Burley, expert testimony is not necessary to explain to a jury that a stronger hook could have been used, thereby making the product safer. However, expert testimony is required to identify for the jury how the purportedly defective hook was the proximate or legal cause of Burley’s injuries. On this, she has not offered any evidence. She relies solely on her argument that a stronger hook could have been made, and because it was not, the Overspeed Trainer was defective and because she was injured the defect caused her injury.
[¶ 34.] A central element to her strict liability (defective design or manufacture) claim is that the defect was the cause of her injuries. While legal or proximate cause is generally a jury question, a causal relationship between the alleged defect and injury is not presumed. To survive a motion for summary judgment, Burley “must present more than ‘[unsupported conclusions and speculative statements, [which] do not raise a genuine issue of fact.’ ” See Bordeaux v. Shannon County Schools, 2005 SD 117, ¶14, 707 N.W.2d 123, 127 (quoting Paradigm Hotel Mortg. Fund v. Sioux Falls Hotel Co., Inc., 511 N.W.2d 567, 569 (S.D.1994)) (additional citation omitted). She has not provided an evidentiary basis tending to show that the injury was caused by a defect rather than the alteration of the product. Therefore, the circuit court properly granted summary judgment on this claim.
[¶ 35.] Lastly, Burley asserts that Kytec is liable for its failure to warn of the dangerous condition of the Over-speed Trainer. To prevail on a claim for strict liability (failure to warn), Burley must establish that
1. a danger existed associated with a foreseeable use of the product;
2. an inadequate warning was given regarding the danger;
3. as a result of the inadequate warning, the product was rendered defective and unreasonably dangerous;
4. the defective and unreasonably dangerous condition existed at the time it left the control of the manufacturer;
5. the product was expected and did reach the user without a substantial unforeseeable change in the condition that it was in when it left the manufacturer’s control; and
6. the defective condition was the legal cause of [her] injuries.
South Dakota Pattern Jury Instruction 150-04. “The issue under strict liability is whether the manufacturer’s failure to adequately warn rendered the product unreasonably dangerous without regard to the reasonableness of the failure to warn judged by negligence standards.” Peterson, 400 N.W.2d at 912 (citation omitted). “Further, the product itself need not be defective. Where a manufacturer or seller has reason to anticipate that danger may result from a particular use of [the] product, and [the manufacturer] fails to give adequate warning of such a danger, the product sold without such warning is in a defective condition within the strict liability doctrine.” Jahnig, 283 N.W.2d at 560 (citations omitted); see also Prince v. Par *410 achutes, Inc., 685 P.2d 83, 87 (Alaska 1984) (citations omitted).
[¶ 36.] Although it is not clear from plaintiffs appellate briefs whether negligent failure to warn remains in issue here or whether Dr. Berkhout’s opinions were offered in support of such claim, his qualifications, subject to a reliability finding, may be sufficient to support that claim. To establish liability for negligent failure to warn, a claimant must prove that (1) the manufacturer knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner; (2) the manufacturer knew or reasonably should have known that users would not realize the danger; (3) that the manufacturer failed to exercise reasonable care and adequately warn of the danger or instruct on the safe use of the product; (4) that a reasonable manufacturer under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product; (5) that the claimant was harmed; and (6) that the manufacturer’s failure to warn or instruct was a proximate or legal cause of the claimant’s injury. Restatement Second of Torts § 388. See also Jahnig v. Coisman, 283 N.W.2d 557, 560 (S.D.1979) (citations omitted).
[¶ 37.] Causation is an essential element in a failure to warn claim. Therefore, to survive a motion for summary judgment, Burley must present sufficient evidence to show that the bending of the hook was a foreseeable alteration that made the product unreasonably dangerous. She must also establish that Kytec should have included a warning against this foreseeable alteration, and even though the hook was bent, the failure to warn legally caused her injuries.[7] As with her prior claims, Burley directs this Court to testimony from Kytec that it did not test or inspect the Overspeed Trainer before putting it into the stream of commerce and that Kytec acknowledged there were no warnings of any kind on the Overspeed Trainer or in the instructions accompanying it. Thus, because Kytec knew that the Overspeed Trainer would be unsafe if the hook was bent, Burley insists that this admission alone creates a material issue of fact on her claim for strict liability (failure to warn).
[¶ 38.] Although Kytec acknowledged that a bent hook would make the Overspeed Trainer unsafe, and conceded that it did not test or inspect the product to determine whether an adequate warning should have been provided against bending the hook, the fact that an accident occurred while Burley was using the Over-speed Trainer does not perforce mean that Kytee’s failure to warn was the legal cause of Burley’s injuries. Indeed, a manufacturer has a duty to test and inspect its products and a breach of this duty can render a product defective. However, a failure to test or inspect cannot, standing alone, cause the resulting injury. See supra n. 6. Rather, the duty to warn “may well encompass a duty to test a product to discover defects.” Kociemba, 707 F.Supp. at 1527 (quoting Willmar Poultry Co. v. Carcus Chemical Co., 378 N.W.2d 830, 836 (Minn.Ct.App.1985)).
[¶ 39.] Therefore, Burley must establish a causal relationship between Kytec’s failure to warn and her injury. This re *411 quires testimony about the product’s design and how, even though Horacek bent the hook, the lack of warnings included with or on the Overspeed Trainer was the legal cause of her injuries. As with her previous claims, causation for failure to warn requires expert testimony. It is beyond the common expertise of a jury to determine that (1) the Overspeed Trainer was defective or unreasonably dangerous based on Kytec’s failure to test or inspect it, (2) Horacek’s bending of the hook was a foreseeable change in the product that Ky-tec had a duty to warn against, and (3) even though the hook was bent, Kytec’s failure to warn was the legal cause of Burley’s injuries.
[¶40.] Had the product not been altered before the accident, Burley may have had sufficient evidence without expert testimony because absent a misuse or alteration it may be reasonable to infer the Overspeed Trainer was the legal or proximate cause of her injuries. However, to impose liability for Kytec’s failure to test and inspect the Overspeed Trainer, “where the causal link to the known harm to [Bur-ley] is the unknovm outcome of testing that was not done, would be beyond the pale of any ... tort doctrine we can identify.” See Valentine, 81 Cal.Rptr.2d at 265; see also Kociemba, 707 F.Supp. at 1527.
[¶ 41.] Dr. Berkhout is qualified to render opinions on the failure to warn claims. Accordingly, with respect to those claims (strict liability and negligence), if the circuit court finds that any of Dr. Berkhout’s opinions meet the reliability prong from DaubeH, then those opinions will be sufficient for these claims to be presented to the jury. On the other hand, should the court find the opinions unreliable, these claims cannot proceed without expert opinion testimony.
[¶ 42.] Affirmed in part, reversed in part, and remanded.
[¶ 43.] GILBERTSON, Chief Justice and ZINTER, Justice, concur.
[¶ 44.] SABERS and MEIERHENRY, Justices, concur in part and dissent in part.

. Burley settled her claim against West Central School District.

. We agree with the circuit court that Dr. Berkhout’s opinions would be relevant. Ky-tec argues that Dr. Berkhout's opinions about failure to warn are irrelevant primarily because Burley never read the instructions on using the Overspeed Trainer, so she could not have been confused or misled by them. However, Kytec knew that this product was sold to schools where the users would be minor student athletes. It knew that coaches or school personnel would be the ones who actually read the instructions before the students used the product.

. A number of federal courts have used the Daubert framework in evaluating the admissibility of opinions from professional ergonom-ists. See Magdaleno v. Burlington Northern R.R. Co., 5 F.Supp.2d 899 (D.Colo.1998) (unpublished); Finley v. NCR Corp., 964 F.Supp. 882, 886 (D.N.J.1996); Dennis v. Pertec Computer Corp., 927 F.Supp. 156, 161 (D.N.J.1996), aff'd, 135 F.3d 764 (3d Cir.1997); Bennett v. PRC Public Sector, Inc., 931 F.Supp. 484, 493-94 (S.D.Tex.1996); Vice v. Northern Telecom, Inc., 1996 WL 200281 (E.D.La.) (unpublished); Dukes v. Illinois Central R.R. Co., 934 F.Supp. 939, 947 (N.D.Ill.1996); Zarecki v. Nat'l R.R. Passenger Corp., 914 F.Supp. 1566, 1572-73 (N.D.Ill.1996);; Schneck v. Int'l Business Machines Corp., 1996 WL 885789 (D.N.J.) (unpublished); Bowers v. Northern Telecom, Inc., 905 F.Supp. 1004, 1009-10 (N.D.Fla.1995); Hopkins v. NCR Corp., 1994 WL 757510 (M.D.La.) (unpublished), aff'd, 53 F.3d 1281 (5th Cir.1995).

. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir.1999) affd, 528 U.S. 440, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000); see also Daubert, 509 U.S. at 588, 113 S.Ct. at 2794, 125 L.Ed.2d 469 (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169, 109 S.Ct. 439, 450, 102 L.Ed.2d 445 (1988)) (highlighting the " 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to ‘opinion’ testimony’ ”). The rule clearly "is one of admissibility rather than exclusion." Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir.1991).

. Dr. Berkhout was only offered as an expert on Burley's inadequate instructions and failure to warn claims.

. Burton v. R.J. Reynolds Tobacco Co., 397 F.3d 906, 920 (10th Cir.2005) ("plaintiff must prove that the manufacturer's failure to test its product resulted in a defective product that caused injury to the plaintiff”) (citing Lindquist v. Ayerst Laboratories, Inc., 227 Kan. 308, 607 P.2d 1339, 1350 (1980)); Kociemba v. GD Searle & Co., 707 F.Supp. 1517, 1527 (D.Minn.1989) ("unless the manufacturer’s breach of its duty to test leads the manufacturer to produce a product that is defective in design, manufacture, or warning, no injury can result”); Valentine v. Baxter Healthcare Corp., 68 Cal.App.4th 1467, 81 Cal.Rptr.2d 252, 265 (1999); West v. Broderick & Bascom Rope Co., 197 N.W.2d 202, 212 (Iowa 1972) ("[f]or testing to be material, substantial evidence must be introduced of a defect in the article”); Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 696 N.E.2d 909, 921 (1998) (breach of duty to test does not create an independent cause of action); Green v. General Motors Corp., 310 N.J.Super. 507, 709 A.2d 205, 216 (Ct.App.1998) ("a failure to test or of inadequate testing may be evidential as an explanation of why a design was defective, but it is not in itself proof of a separate basis for liability”); see also Oddi v. Ford Motor Co., 234 F.3d 136, 143 (3d Cir.2000) (no independent cause of action in Pennsylvania for negligent failure to test).

. In its brief to this Court, Kytec contends that because Burley did not read the instructions, the proper party to bring a failure to warn claim would be Horacek. Horacek, however, was in a role as parens patriae when reading the instructions before the student athletes’ use of the Overspeed Trainer. Therefore, that fact that Burley did not read the instructions is immaterial.