LOKEN, Circuit Judge,
dissenting.
I respectfully dissent. In my view, the district court correctly concluded that, because Carol O’Neal had the Remington Model 700 rifle destroyed before this action was filed, she cannot prove that a design or manufacturing defect present when the rifle left Remington’s control in' 1971 proximately caused the tragic hunting accident that killed her husband 37 years later. To make clear why this is so, I will separately analyze two distinct defect theories articulated by O’Neal’s expert, Charles W. Powell, which the court has confusingly intermingled.
First, as the court has explained, Powell opined in his October 2012 SSEC Engineering Report that the triggers in all Model 700 rifles manufactured at that time were defective because the “Walker” fire control system included- a connector that separates briefly from the trigger when the rifle' is fired, permitting “interferences” such as dirt and deposits to become lodged between the connector and trigger, which can lead to a misfire. This is a design defect theory. Crucial to this theory is evidence that an interference was present that caused a particular Model 700 rifle to misfire causing injury. Lacking this evidence, Powell at his deposition disclaimed any reliance on his design defect theory in this case:
Q. Are you able to offer an opinion that at the time of this shooting there was any separation of the connector away from the trigger body?
A. No. I can’t tell you one way or the other because we don’t have the rifle to look at. It does not appear so because the rifle had been operating correctly for a long period of time ....
:}i # ‡
Q. Okay. So, sir, can you offer an opinion to a reasonable degree of certainty that the presence of the connector in the design of the subject rifle was causally related to how this shooting occurred?
A. I cannot tell you exactly what effect the connector had in this case without examining the rifle.
Given this testimony by O’Neal’s only expert, the summary judgment record contained no evidence that the alleged design defect caused the misfire that killed Lanny O’Neal. Tellingly, while the first three pages of the fact section of O’Neal’s brief to this court explained the alléged connector design defect in detail, her brief opposing summary judgment submitted to the district court did not even mention the connector or this design defect theory. An appellate court should always be skeptical when it is asked to reverse based on a claim or theory not presented to the trial court.
Second, as the court has explained, Powell’s Report referenced internal Remington documents estimating that 1% of the Model 700 rifles manufactured before 1975 were defectively manufactured with “inadequate Sear lift” that caused the rifle to “inadvertently fire by movement of the safety lever to the OFF position, without pulling the trigger.” O’Neal argued to the *983 district court that summary judgment should be denied because there was sufficient circumstantial evidence that the rifle that killed her husband was one of the 1% that had this manufacturing defect — what the parties refer to as a “trick condition”— that causes the rifle to discharge when the safety lever is released without pulling the trigger. Powell’s deposition testimony established that inspecting the rifle was critical to proving this theory:
Q. Okay. So do you have any data, evidence or information that more than one percent of model 700 rifles manufactured in 1970 had inadequate sear lift when they came off the line?
A. No, I don’t have the data one way or the other.
Q. If you had the rifle — if we had the rifle to examine, could you verify with certainty whether that rifle had inadequate sear lift?
A. Yes.
iK ^ ❖
Q. ... [Tjhere were three adjusting screws on fire controls of model 700s of the 1970 vintage, right?
A. Correct.
Q. There was a screw that would adjust the amount of overtravel?
A. Yes.
Q. A screw that would adjust the amount of sear engagement?
A. Correct.
Q. And a screw that would adjust the trigger control force?
A. Yes.
Q. Do you have any opinion that any of those screws had been adjusted from the time the rifle left the factory in about 1970 until the time of the O’Neal shooting?
A. You would have to see the rifle in order to tell if they had been adjusted and what their values were.
To reverse the grant of summary judgment, we must conclude that O’Neal presented sufficient evidence that, when the Model 700 rifle left Remington’s control, it was in an unreasonably dangerous condition because of a design or manufacturing defect, and that Lanny O’Neal’s injury was proximately caused by that defect, rather than by a subsequent alteration of the rifle. See Burley v. Kytec Innovative Sports Equip., Inc., 737 N.W.2d 397, 408-09 (S.D.2007). “Expert testimony is generally necessary to establish elements of negligence and strict liability.” Nationwide Mut. Ins. Co. v. Barton Solvents, Inc., 855 N.W.2d 145, 151 (S.D.2014), citing Burley, 737 N.W.2d at 407-11.
Here, expert Powell could not opine that the alleged connector design defect caused the shooting without examining the rifle to determine if any foreign debris or other interference had separated the connector from the trigger body. Nor could Powell opine without examining the rifle whether it was one of the 1% of Model 700 rifles manufactured in the early 1970’s with the alleged “inadequate Sear lift” manufacturing defect. In addition, he could not testify without examining the rifle whether subsequent alteration, adjustment, or damage proximately caused it to fire without the user pulling the trigger. I agree that South Dakota law permits plaintiffs to prove elements of a products liability claim by circumstantial evidence in many situations. But given expert Powell’s testimony, O’Neal’s only circumstantial evidence that the alleged design defect caused the accident, or that the gun left Remington’s control with the alleged manufacturing defect, was the fact that Ritter, an excited deer hunter using a borrowed rifle, told accident investigators the rifle fired on release of the safety without a trigger pull.
Under South Dakota law, “unless it is patently obvious that the accident would *984 not have happened in the absence of a defect, a plaintiff cannot rely merely on the fact that an accident occurred.” Nationwide, 855 N.W.2d at 151 (quotation omitted). Here, whether a design or manufacturing defect present when the Model 700 rifle left Remington’s control proximately caused a tragic shooting 37 years later was far from “patently obvious.” After giving O’Neal ample opportunity to develop and present probative evidence to establish both defect and causation, the district court concluded “there is a complete lack of evidence such that a jury could only speculate and guess as to issues in which O’Neal bears the burden of proof.” On this record, summary judgment was properly granted because, as in Burley, O’Neal “has not provided an evi-dentiary basis tending to show that the injury was caused by a defect rather than the alteration of the product.” 737 N.W.2d at 409.
Accordingly, I would affirm the judgment of the district court.