#26176-rev & rem-LSW

**2013 S.D. 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

TAMMY JEAN KVASNICKA,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBIN J. HOUWMAN
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.

NICOLE J. LAUGHLIN
MARCUS WALTON of
Minnehaha County
  Public Defender's Office
Sioux Falls, South Dakota                    Attorneys for defendant
                                             and appellant.

\* \* \* \*

ARGUED ON OCTOBER 2, 2012

OPINION FILED **03/27/13**

#26176

WILBUR, Justice

[¶1.] Tammy Kvasnicka was convicted by a jury of first-degree manslaughter by means of a dangerous weapon, vehicular homicide, vehicular battery, and driving under the influence (DUI). Kvasnicka was acquitted of two charges of first-degree manslaughter while engaged in the commission of a felony. In her appeal to this Court, Kvasnicka argues that the language "while engaged in the commission of a felony" was prejudicial when referring to the charge of DUI in a first-degree manslaughter trial. Kvasnicka also argues that the trial court abused its discretion in overruling her objections to the admissibility of Officer Brian Crozier's testimony.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.] On July 9, 2010, Kvasnicka celebrated her birthday by having several alcoholic drinks at a friend's house and at downtown bars in Sioux Falls, South Dakota. In the early morning hours on July 10, Kvasnicka left the downtown area in her Dodge Intrepid.

[¶3.] At approximately 2:00 a.m., Kvasnicka was traveling southbound in the northbound lane on Interstate 229 when she struck a vehicle carrying five people. The front seat passenger suffered a serious injury to his arm and a back seat passenger died at the scene. Kvasnicka was not seriously injured in the collision.

[¶4.] At the hospital, Kvasnicka was read her Miranda rights and placed under arrest. Her blood was drawn at 3:44 a.m., which reflected a blood alcohol

-1-

content between 0.225 and 0.219. Following a second drawing at 4:47 a.m., Kvasnicka's blood alcohol content was between 0.204 and 0.200.

[¶5.] On the evening of July 10, Kvasnicka was questioned at the Sioux Falls Police Department. After being read her Miranda rights, Kvasnicka admitted that on the previous evening she consumed several alcoholic drinks and smoked marijuana prior to the collision.

[¶6.] A grand jury indicted Kvasnicka with seven counts: count one – manslaughter in the first-degree while engaged in the commission of a felony, driving while under the influence of alcohol, class C felony, in violation of SDCL 22-16-15(1); count two – manslaughter while engaged in the commission of a felony, driving while having .08 percent or more by weight of alcohol in the blood, class C felony, in violation of SDCL 22-16-15(1); count three – manslaughter in the first-degree by means of a dangerous weapon, class C felony, in violation of SDCL 22-16-15(3); count four – vehicular homicide, class 3 felony, in violation of SDCL 22-16-41; count five – vehicular battery, class 4 felony, in violation of SDCL 22-18-36; count six – driving while under the influence of any alcoholic beverage, marijuana, or any controlled drug or substance, class 1 misdemeanor, in violation of SDCL 32-23-1; count seven – driving while having .08 percent or more by weight of alcohol in the blood, class 1 misdemeanor, in violation of SDCL 32-23-1. The State also filed two part II informations because Kvasnicka had been previously convicted in 2006 of two DUI charges and one second-degree burglary charge.

[¶7.] Kvasnicka filed a motion to dismiss counts one and two on the grounds that DUI is not a felony offense as required by SDCL 22-16-15(1). Kvasnicka also

sought to dismiss count three on the basis that an automobile should not be considered a dangerous weapon for purposes of SDCL 22-16-15(3). The motions were denied.

[¶8.] Prior to trial, Kvasnicka again moved to dismiss counts one, two, and three predicated upon the same grounds as her previous motion. The trial court denied the motion but granted Kvasnicka a standing objection as to those counts. The case proceeded to a jury trial.

[¶9.] At trial, the State offered the expert testimony of Officer Crozier, who was trained in accident reconstruction.[1] Before Officer Crozier was allowed to testify further, Kvasnicka objected to his testimony. A bench conference was held. Kvasnicka objected to Officer Crozier's kinetic energy testimony on the grounds of foundation and relevancy.

[¶10.] The trial court found that Officer Crozier's testimony was relevant because it provided information to the jury to demonstrate the force of the impact and to show that Kvasnicka's Dodge Intrepid was being used as a dangerous weapon at the time of the collision. As to foundation, the trial court found that Officer Crozier "did provide quite a bit of information about his education and

---

1. Officer Crozier testified that he had been provided information about the collision. He testified that he was unable to perform an accident reconstruction to determine the speed of Kvasnicka's vehicle because of the angle of the impact of the collision.

background in accident reconstruction, as well as teaching crash investigations at the police academy in Pierre."[2]

[¶11.] Following voir dire of Officer Crozier, Kvasnicka again objected to the testimony on the grounds of relevance, foundation, and prejudice. The trial court overruled Kvasnicka's relevancy objection incorporating its previous ruling. Further, the court determined that "the officer has clearly articulated the basis for his calculations and he also articulated that he found the[ ] other references - - Jerry Rice, the crossbow and the firearm - - to be comparison tools, so [the court] will allow the testimony."[3] In front of the jury, Officer Crozier opined that the kinetic energy of a 2001 Dodge Intrepid traveling at 65 miles per hour would be 436,583 foot-pounds and that it would take the simultaneous firing of nine-hundred-two 40-caliber Glock pistols at the same target to achieve the same amount of kinetic energy that Kvasnicka's Dodge Intrepid would exert at 65 miles per hour.

[¶12.] At the close of evidence, Kvasnicka moved for judgment of acquittal relying on the same arguments she made in her motions to dismiss. *See supra* ¶¶ 7-

---

2.    At time of trial, Officer Crozier, who had been a police officer since 1988, began to take courses in accident reconstruction in 2002. Officer Crozier had continued to take classes for accident reconstruction until a week prior to trial. He also taught accident reconstruction at the police academy in Pierre and at Southeast Technical Institute. Additionally, Officer Crozier testified that in making his kinetic energy calculations, he utilized formulas that are "very well recognized throughout the accident reconstruction community." These kinetic energy formulas were contained within an equation manual from the Institute of Police Technology and Management at the University of North Florida, which Officer Crozier brought with him to the witness stand.

3.    Officer Crozier's testimony to the jury did not include the kinetic energy calculations of the 40-yard dash by Jerry Rice or the crossbow.

8.  The trial court denied her motion based on its previous rationale as to the motions to dismiss.  The case was then submitted to the jury.

[¶13.]     During jury deliberations, the jury presented four questions to the trial court.  Three of the questions related to whether a DUI charge is a felony.  Specifically, the jurors asked, "Is it a felony to drive under the influence?"  The second question was "Is it a felony to drive while having a blood alcohol level of a .08 or higher?"  The jurors also asked "Is a DWI that results in a death a felony?"

[¶14.]     After arguing that the juror's questions demonstrated confusion as to whether or not the DUI was a felony, Kvasnicka moved for mistrial.  The trial court denied the motion for mistrial relying on her rationales from Kvasnicka's previous motions to dismiss and motion for judgment of acquittal.  Following this ruling, the court advised the jury to read the instructions as a whole and rely upon the instructions as provided.  Neither the State nor Kvasnicka objected to this instruction.

[¶15.]     The jury found Kvasnicka not guilty of the two counts of manslaughter in the first-degree while engaged in the commission of a felony and guilty of manslaughter in the first-degree by means of a dangerous weapon, vehicular homicide, vehicular battery, and DUI.  She admitted to both part II informations.  Kvasnicka was sentenced to 70 years in prison with 18 years suspended on the manslaughter in the first-degree by means of a dangerous weapon charge.  She was also sentenced to 25 years in prison for vehicular homicide, 15 years for vehicular

#26176

battery, and 2 years for felony DUI, all to run concurrent with the manslaughter charge.[4]

[¶16.] Kvasnicka appeals and raises the following issues:

> 1. Whether the language "while engaged in the commission of a felony" under SDCL 22-16-15(1) is prejudicial when referring to the crime of driving under the influence.

> 2. Whether the trial court abused its discretion in admitting the expert testimony of Officer Brian Crozier regarding the kinetic energy of Kvasnicka's vehicle.

**STANDARD OF REVIEW**

[¶17.] This Court reviews "the trial court's denial of a motion to dismiss under an abuse of discretion standard." *State v. Miranda*, 2009 S.D. 105, ¶ 14, 776 N.W.2d 77, 81 (quoting *State v. Williams*, 2008 S.D. 29, ¶ 23, 748 N.W.2d 435, 442). Additionally, this Court reviews the trial court's "denial of a motion for mistrial under the abuse of discretion standard." *State v. Dillon*, 2010 S.D. 72, ¶ 28, 788 N.W.2d 360, 369. "We will affirm a trial court's denial of a mistrial unless we find abuse of discretion resulting in clear prejudice." *Id.* "Error is prejudicial when, in all probability . . . it produced some effect upon the final result and affected rights of the party assigning it." *Id.* (quoting *State v. Fool Bull*, 2009 S.D. 36, ¶ 34, 766 N.W.2d 159, 167). Abuse of discretion is defined as "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *State v. Lemler*, 2009 S.D. 86, ¶

---

4. The vehicular homicide charge was to run consecutive to count six, one of the felony DUI charges. The vehicular battery charge was to run consecutive to the vehicular homicide charge and count seven, the other felony DUI charge.

-6-

40, 774 N.W.2d 272, 286 (quoting *Burley v. Kytec Innovative Sports Equip., Inc.*, 2007 S.D. 82, ¶ 12, 737 N.W.2d 397, 402).

[¶18.]     Additionally, "the trial court has broad discretion concerning the qualification of experts and the admission of expert testimony." *State v. Running Bird*, 2002 S.D. 86, ¶ 38, 649 N.W.2d 609, 617 (quoting *State v. Logue*, 372 N.W.2d 151, 156 (S.D. 1985)).  "We review a trial court's 'decision to admit or deny an expert's testimony under the abuse of discretion standard.'" *Lemler*, 2009 S.D. 86, ¶ 18, 774 N.W.2d at 278 (quoting *Burley*, 2007 S.D. 82, ¶ 12, 737 N.W.2d at 402). "This [C]ourt has consistently held that the trial judge has the discretionary power to determine whether a witness is an expert witness.  As such, [her] ruling will not be disturbed unless there is no evidence that the witness had the qualifications of an expert or the trial court has proceeded upon erroneous standards." *State v. Fisher*, 2011 S.D. 74, ¶ 42, 805 N.W.2d 571, 580 (quoting *State v. Edmundson*, 379 N.W.2d 835, 839 (S.D. 1985)).

[¶19.]     Lastly, a trial court's evidentiary rulings are reviewed under an abuse of discretion standard.  *State v. Roach*, 2012 S.D. 91, ¶ 37, 825 N.W.2d 258, 268. "[O]ur review requires a two-step process; first, to determine whether the trial court abused its discretion in making an evidentiary ruling; and second, whether this error was a prejudicial error that 'in all probability' affected the jury's conclusion." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 59, 764 N.W.2d 474, 491.

## ANALYSIS AND DECISION

[¶20.]     **1.     Whether the language "while engaged in the commission of a felony" under SDCL 22-16-15(1) is prejudicial when referring to the crime of driving under the influence.**

[¶21.]     Kvasnicka argues that the language "while engaged in the commission of a felony" was prejudicial when referring to the crime of driving under the influence.  In arguing her motions to dismiss, Kvasnicka asserted that the language of the indictment, specifically "while engaged in the commission of a felony," improperly inferred the existence of Kvasnicka's prior DUI convictions.  She further contends that the jury's questions as to whether or not the DUI was a felony were evidence of the prejudice.

[¶22.]     The State initially argues that, because the jury convicted Kvasnicka on counts other than the counts containing the language "while engaged in the commission of a felony," Kvasnicka's argument is moot.  In the alternative, the State contends that the trial court was within its discretion to deny Kvasnicka's motions to dismiss and motion for mistrial because the felony DUI could be used as the predicate felony under SDCL 22-16-15(1) and SDCL 22-16-4(2).  Based on a plain reading of SDCL 22-16-15(1) and SDCL 22-16-4(2), the State contends that the Legislature has not excluded felony DUI as the predicate offense for first-degree manslaughter.

[¶23.]     Initially, this Court must address the State's contention that, because the jury convicted Kvasnicka on counts other than the counts containing the language "while engaged in the commission of a felony," Kvasnicka's argument is moot.  The State cites *State v. Clothier* to support its proposition that Kvasnicka's argument is moot.  381 N.W.2d 253, 258-59 (S.D. 1986) (determining that Clothier's arguments as to the first-degree murder charge were moot when the jury did not find him guilty on the charge but instead found him guilty of first-degree

manslaughter). "It is a fundamental principle of our jurisprudence that courts do not adjudicate issues that are not actually before them in the form of cases and controversies." *Moeller v. Weber*, 2004 S.D. 110, ¶ 45, 689 N.W.2d 1, 16.

[¶24.]     The jury found Kvasnicka guilty of first-degree manslaughter by means of a dangerous weapon, vehicular homicide, vehicular battery, and driving under the influence. Kvasnicka was acquitted of the charges containing the language "while engaged in the commission of a felony." Thus, Kvasnicka's argument that the language "while engaged in the commission of a felony" was prejudicial when referring to the crime of driving under the influence is moot because the jury acquitted her on those counts. We decline to address an issue that is not before us in the form of a case or controversy.

[¶25.]     **2.     Whether the trial court abused its discretion in admitting the expert testimony of Officer Brian Crozier regarding the kinetic energy of Kvasnicka's vehicle.**

[¶26.]     Kvasnicka argues that the trial court abused its discretion in admitting Officer Crozier's expert testimony. She challenges Officer Crozier's expertise to testify about kinetic energy and the foundation upon which he based his opinions. Additionally, Kvasnicka asserts that his testimony was not relevant because the kinetic force generated by a vehicle traveling at 65 miles per hour had no bearing on any elements of the crimes listed in the indictment. Lastly, Kvasnicka argues that Officer Crozier's testimony, even if relevant, was unfairly prejudicial because the State compared an inherently dangerous weapon, a 40-caliber Glock pistol, to Kvasnicka's vehicle, an object whose intended use is not inherently dangerous.

[¶27.]     SDCL 19-15-2 (Rule 702) governs the admissibility of expert testimony.[5] This Court has stated on previous occasions that,

> [u]nder this rule, before a witness can testify as an expert, that witness must be qualified. Furthermore, under *Daubert*, the proponent offering expert testimony must show that the expert's theory or method qualifies as scientific, technical, or specialized knowledge as required under Rule 702. Before admitting expert testimony, a court must first determine that such qualified testimony is relevant and based on a reliable foundation. The burden of demonstrating that the testimony is competent, relevant, and reliable rests with the proponent of the testimony. The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence.

*Burley*, 2007 S.D. 82, ¶ 13, 737 N.W.2d at 402-03 (internal citations and quotation marks omitted). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Fisher*, 2011 S.D. 74, ¶ 41, 805 N.W.2d at 580 (quoting *Lemler*, 2009 S.D. 86, ¶ 18, 774 N.W.2d at 278).

---

5.     SDCL 19-15-2 (Rule 702) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data,
> (2) The testimony is the product of reliable principles and methods, and
> (3) The witness has applied the principles and methods reliably to the facts of the case.

*See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (providing the standards for admission of expert testimony).

[¶28.] The record demonstrates Officer Crozier was trained in accident reconstruction and performed a kinetic energy calculation using the weight of a 2001 Dodge Intrepid and the speed limit of 65 miles per hour. In doing so, he used a kinetic energy formula that is well-recognized in the accident reconstruction community and concluded the kinetic energy of a 2001 Dodge Intrepid traveling at 65 miles per hour was 436,583.33 foot-pounds. Thus, the trial court did not abuse its discretion in qualifying Officer Crozier as an expert.

[¶29.] Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19-12-1 (Rule 401). "Evidence which is not relevant is not admissible." SDCL 19-12-2 (Rule 402). And if evidence, which is not relevant, is erroneously admitted, the appellant must show that the admission of the evidence was prejudicial error. *Supreme Pork, Inc.*, 2009 S.D. 20, ¶ 58, 764 N.W.2d at 491. "To show such prejudicial error an appellant must establish affirmatively from the record that under the evidence the jury might and probably would have returned a different verdict if the alleged error had not occurred." *Id.* (quoting *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 113 (S.D. 1993)).

[¶30.] Here, the State was required to prove that Kvasnicka used her vehicle as a dangerous weapon. *See* SDCL 22-16-15(3). A "[d]angerous weapon" or "deadly weapon" is defined as "any firearm, stun gun, knife or device, instrument, material or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, or by the manner in which it is used is likely to

inflict death or serious bodily harm[.]" SDCL 22-1-2(10). Therefore, although a vehicle is not inherently designed to inflict death or serious bodily harm, if it is used in a manner that is likely to inflict death or serious bodily harm, "it constitutes a dangerous weapon[.]" *See State v. Seidschlaw*, 304 N.W.2d 102, 105 (S.D. 1981).

[¶31.]    Officer Crozier's testimony was not relevant because neither the kinetic energy calculation nor the pistol comparison related to the manner in which Kvasnicka drove *her* vehicle. Officer Crozier merely used the weight of a Dodge Intrepid and the speed limit of 65 miles per hour to reach his opinion. In fact, using Officer Crozier's calculation and comparison, any person driving a 2001 Dodge Intrepid at 65 miles per hour on Interstate 229 would be accumulating the same kinetic energy as the simultaneous firing of nine-hundred-two 40-caliber Glock pistols.

[¶32.]    Further, despite the trial court's ruling that Officer Crozier's opinion would "give the jury some information about the force perhaps of impact[,]" Officer Crozier did not testify as to any force of impact. Indeed, he explained that because of the angle of impact, he was unable to reconstruct the accident to determine the speed of Kvasnicka's vehicle. Rather, Officer Crozier informed the jury about the kinetic energy of Kvasnicka's vehicle traveling as any 2001 Dodge Intrepid would at 65 miles per hour. Yet, Officer Crozier was then able to portray Kvasnicka's use of her vehicle in the same way as nine-hundred-two people firing 40-caliber Glock pistols at the same time. Neither the kinetic energy calculation nor the pistol comparison was relevant because the evidence did not make it more probable or likely that Kvasnicka was using *her* vehicle as a dangerous weapon. Moreover, it

could be interpreted that the State, in its closing argument, conceded the questionable relevance of the pistol comparison testimony by advising the jury that they did not need to consider that testimony in deciding whether Kvasnicka was driving her vehicle in a dangerous manner. Thus, the trial court abused its discretion in concluding that Officer Crozier's testimony was relevant.

[¶33.] Additionally, the record demonstrates that, if the admission of this evidence had not occurred, the jury might and probably would have returned a different verdict. Officer Crozier's testimony was not specific to the manner in which Kvasnicka drove her vehicle. Officer Crozier testified that he used 65 miles per hour in his calculation based on the speed limit of that section of Interstate 229. This speed was not based upon actual information about Kvasnicka's speed.

[¶34.] Even though his calculation was not specific to the manner in which Kvasnicka drove her vehicle, Officer Crozier was then allowed to portray *Kvasnicka's* use of her vehicle in the same way as the simultaneous firing of nine-hundred-two 40-caliber Glock pistols at the same target. The State chose to make this comparison in order to prove that the vehicle was a dangerous weapon. Guns are defined by our statutes as dangerous or deadly weapons and are universally considered to be inherently dangerous. SDCL 22-1-2(10). And, Kvasnicka, though she admitted some of the charges, strongly contested the manslaughter charges and denied that she used her vehicle as a dangerous weapon. It was for the jury to decide the issue.

[¶35.] The effect of the comparison testimony on the jury in determining Kvasnicka's guilt was compounded by the fact that the kinetic energy calculation

and pistol comparison testimony were presented by an expert, and expert testimony is recognized as having the "aura of reliability and trustworthiness [that] surround[s] scientific evidence." *State v. Werner*, 482 N.W.2d 286, 291-92 (S.D. 1992). By allowing an expert to portray Kvasnicka's use of her vehicle, which is not inherently dangerous, in the same way as nine-hundred-two inherently dangerous weapons firing simultaneously, the jury was left with virtually no decision to make other than to conclude that Kvasnicka used her vehicle as a dangerous weapon.

[¶36.] Finally, there was more than one reference to the pistol comparison testimony during the trial. The comparison testimony was before the jury twice – once during the testimony of Officer Crozier, the only expert to testify in this case, and then again by the State during its closing argument.

[¶37.] The trial court abused its discretion when it concluded that Officer Crozier's testimony was relevant. The erroneous admission of Officer Crozier's kinetic energy calculation and the pistol comparison testimony affected the jury in that the jury probably would have returned a different verdict had Officer Crozier's testimony not been admitted. We reverse and remand for a new trial.

## CONCLUSION

[¶38.] The jury did not convict Kvasnicka on the counts containing the language "while engaged in the commission of a felony." Therefore Kvasnicka's argument that she was prejudiced is moot. Additionally, the trial court abused its discretion when it concluded that Officer Crozier's testimony was relevant. We therefore reverse and remand for a new trial consistent with this opinion.

[¶39.] KONENKAMP and SEVERSON, Justices, concur.

#26176

[¶40.]        GILBERTSON, Chief Justice, and ZINTER, Justice, concur in part and dissent in part.


ZINTER, Justice (concurring in part and dissenting in part).

[¶41.]        I join the opinion of the Court on issue one.  On issue two, I dissent. The circuit court did not abuse its discretion in determining that the kinetic energy of the defendant's vehicle at the time of the collision was relevant to proving whether the defendant was using her vehicle in a manner likely to cause death or serious bodily harm.  Additionally, even if the circuit court erred in admitting the evidence, the error was not reversible error.  The evidence would not have changed the jury's verdict.  The defendant did not dispute the material facts unequivocally reflecting that she was using her vehicle as a dangerous weapon; i.e. in a manner that was likely to cause death or serious bodily harm.

[¶42.]        Officer Brian Crozier, an undisputedly qualified accident reconstructionist, was unable to perform accident speed reconstruction because of the angle of impact of the two vehicles and the lack of markings on the highway.  He was, however, able to perform elementary kinetic energy calculations.  Those calculations disclosed the energy or force that the defendant's 2001 Dodge Intrepid exerted on the other vehicle at the time of the collision.[6]  The comparative kinetic energy of the defendant's vehicle and handguns was offered by the State to prove

_____

6.    The physics/mathematical formulas that Officer Crozier used for determining kinetic energy were not challenged as unreliable science.  As Officer Crozier explained, the calculations were "very well recognized throughout the accident reconstruction community."  They were published, "proven theories . . . based on [the] laws of physics, math[,] and geometry."

-15-

that the defendant had used her vehicle as a "dangerous weapon"; i.e., in a manner that was "likely to inflict death or serious bodily harm" within the meaning of SDCL 22-16-15(3) and SDCL 22-1-2(10) (requiring that "first degree manslaughter" be committed by use of a "dangerous weapon"). In response to the defendant's relevancy objection, the circuit court ruled that Officer Crozier's testimony was relevant because it showed "that the car at the time of the accident was being used as a deadly weapon[,]" and that it "g[a]ve the jury some information about the force . . . of an impact."

[¶43.] Evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19-12-1. "Relevancy is demonstrated where evidence is necessary to prove an element of the crime . . . ." *State v. Lassiter,* 2005 S.D. 8, ¶ 14 n.2, 692 N.W.2d 171, 175 n.2 (citing *State v. Red Star,* 2001 S.D. 54, ¶ 11, 625 N.W.2d 573, 577).

[¶44.] In this case, the kinetic energy evidence was relevant because it was offered to prove an element of first-degree manslaughter. At trial, the defendant argued that she was not guilty of first-degree manslaughter because her manner of use of the vehicle did not make the vehicle a dangerous weapon, an element of the offense under SDCL 22-16-15(3) and SDCL 22-1-2(10). "A dangerous weapon is defined as 'any firearm, knife or device, instrument, material or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, *or by the manner in which it is used is likely to inflict death or serious bodily harm.'*" *Seidschlaw,* 304 N.W.2d at 105 (emphasis added) (citing the

materially identical predecessor to SDCL 22-1-2(10)). Because a motor vehicle is generally not calculated or designed to inflict death or serious bodily harm, the State was required to prove that the defendant had used her vehicle in a manner that was "likely to inflict death or serious bodily harm." *See* SDCL 22-1-2(10). *See also State v. Stetter*, 513 N.W.2d 87, 91-92 (S.D. 1994) (stating that a vehicle can constitute a dangerous weapon in a first degree manslaughter prosecution); *Seidschlaw*, 304 N.W.2d at 105-06 (same). Kinetic energy evidence was relevant to prove this element. When considered collectively with the defendant's speed and manner of driving, the kinetic energy of the vehicle made it more probable the vehicle was being used in a manner that was likely to inflict death or serious bodily harm.

[¶45.] The majority opines that Officer Crozier's testimony was not relevant because it was not "related to the manner in which Kvasnicka drove *her* vehicle." *See supra* ¶ 31. According to the Court, "Officer Crozier merely used the weight of a Dodge Intrepid and the *speed limit* of 65 miles per hour to reach his opinion." *Supra* ¶ 31. (emphasis added). The Court also points out that Officer Crozier did not personally testify to the actual force of impact. *Supra* ¶ 32.

[¶46.] However, there was no dispute that the defendant was driving her vehicle at highway speeds and that she caused a high impact collision. The defense offered no evidence to contradict four State witnesses who testified to the extensive damage caused by the high impact collision and the high rate of speed of the defendant's vehicle. That testimony provided the evidentiary foundation necessary

to support Officer Crozier's use of a 65 miles per hour rate of speed in making his kinetic energy calculations.

[¶47.]    More specifically, Corbin Burwell, the driver and owner of the other vehicle, indicated that the crash was a high impact collision. He testified that the defendant's oncoming vehicle hit his vehicle "hard" on the front and passenger side all the way to the back, sliding his car sideways into the ditch. He indicated that the passenger side of his vehicle was "cut in half." He further indicated that the force of the impact partially ejected and killed a passenger in the backseat; it knocked Burwell partially out of the car, causing multiple back injuries; and it caused another passenger to suffer a severely broken arm.

[¶48.]    Highway Patrol Sergeant Kyle Hoekstra was the first responding officer. He confirmed that Burwell's vehicle was heavily damaged on both the front and passenger side. The defendant's vehicle also had "very severe" front and passenger-side damage. The front passenger side of the vehicle was completely destroyed. The impact was sufficient to force the vehicle's engine into the passenger seat area of the defendant's vehicle. Sergeant Hoekstra observed that the force of the impact caused the vehicles to come to rest 300 to 400 yards apart. The debris field from the collision covered all three northbound lanes of the interstate for this entire distance.

[¶49.]    Highway Patrol Trooper Robert Mayer verified that the speed limit in that area was 65 miles per hour. Although he did not know the exact speed of the defendant's vehicle, Mayer testified that based on the damage to the vehicles and the debris field, "both vehicles [were] definitely going highway speed." Mayer

indicated it was unusual to see vehicle crashes causing that much damage. Based on his experience of thirteen years investigating 500 crashes, he opined that this was definitely a "highway-traffic-speed accident."

[¶50.] Trooper Mayer also testified regarding a statement he had taken at the scene from Edward Bouwman. Bouwman was a driver who, by evasive maneuvers, had successfully avoided the defendant's oncoming vehicle seconds before the fatal collision. When asked to estimate the defendant's speed, Bouwman told Mayer that the defendant's vehicle "was flying." When testifying at trial, Bouwman indicated that he observed the defendant's vehicle gaining speed and accelerating, consistent with interstate driving. He estimated that, when the vehicle passed him, the defendant's vehicle's speed was between 50 and 65 miles per hour. Bouwman testified that, as he watched the car in his rearview mirror, he did not recall seeing any brake lights before the impact.

[¶51.] Thus, the Court errs in opining that Officer Crozier's kinetic energy evidence was not tailored to the defendant's speed and use of the vehicle. Officer Crozier's opinion was based on undisputed evidence that the defendant was operating her vehicle at highway speeds at the time of the high impact collision. Even the defendant concedes the point, acknowledging that she "was traveling between 55 and 65 miles per hour" at the time of the collision. Brief for Appellant at 4.

[¶52.] The Court also opines that the kinetic energy evidence was not relevant because it only informed the jury about the kinetic energy that any 2001 Dodge Intrepid would exert at 65 miles per hour. *Supra* ¶¶ 31, 32. However, this is

the "narrow view of 'relevancy' [that] misinterprets Rule 401 [SDCL 19-12-1]" and has been rejected in this jurisdiction. *See Supreme Pork, Inc.*, 2009 S.D. 20, ¶ 46, 764 N.W.2d at 487-88. Under the correct view of relevancy, evidence need not directly prove the ultimate fact: any proffered item is relevant if it merely appears to "alter the probabilities of a consequential fact[.]" *Id.* And in this case, the kinetic energy of any vehicle traveling at highway speeds was a fact of consequence to the question whether the defendant's manner of use of her vehicle would likely cause death or serious bodily harm.

[¶53.] Moreover, today's Court fails to recognize that, in analyzing relevancy, all evidence must be considered collectively. *See id.* Therefore, "[e]ven though each piece of evidence considered separately is less than conclusive, *if when considered collectively with other evidence* it tends to establish a consequential fact, such evidence is relevant. For purposes of Rule 401, that is enough." *Id.* (emphasis added) (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 401.04[2][c] (*Joseph M. McLaughlin, ed., Matthew Bender* 2d ed. 2008)).

[¶54.] In this case, the Court fails to consider the kinetic energy evidence of any 2001 Dodge Intrepid collectively with the other evidence establishing the manner in which the defendant was using her vehicle. When considered collectively, the kinetic energy of a 2001 Dodge Intrepid and the defendant's manner of use of that vehicle increased the probability that death or serious bodily harm was likely. After all, there is a difference between the likelihood of death or serious bodily harm resulting from the kinetic energy exerted by a vehicle being operated by an impaired driver in a grocery store parking lot and the kinetic energy

of an identical vehicle being operated on an interstate at highway speeds. Officer Crozier's testimony provided the jury with quantitative and qualitative evidence of the energy exerted by the higher velocity vehicle. Certainly, the high kinetic energy evidence increased the likelihood of death or serious bodily harm resulting from this defendant's method of operating her vehicle at highway speeds.

[¶55.] The comparative kinetic energy evidence was also relevant. Officer Crozier explained that a kinetic energy comparison was useful in understanding the energy or force exerted by a vehicle traveling at highway speeds. Officer Crozier compared the kinetic energy of the defendant's vehicle and his handgun, but he also indicated that the energy or force exerted by the defendant's vehicle could be compared to any other object. Because the State was required to prove that the defendant's motor vehicle was a "dangerous weapon," the circuit court did not abuse its discretion in allowing this motor vehicle's kinetic energy to be compared to that of a more commonly understood dangerous weapon. After all, the defendant's manner of use of her vehicle that morning made the vehicle legally the same as a gun or other inherently "dangerous weapon." SDCL 22-1-2(10). *See also Stetter*, 513 N.W.2d at 91-92; *Seidschlaw*, 304 N.W.2d at 105-06. Because the State was required to prove that the manner of use of the vehicle was likely to cause death or serious bodily harm, the circuit court's kinetic energy ruling was not "clearly against reason and evidence." *See Roach*, 2012 S.D. 91, ¶ 37, 825 N.W.2d at 268.

[¶56.] Finally, even if we assume that the circuit court erred in allowing the kinetic energy calculation or the kinetic energy comparison, the defendant failed to establish that the error was prejudicial. *See State v. Vatne*, 2003 S.D. 31, ¶ 10, 659

N.W.2d 380, 383 (requiring reversible error to be prejudicial). "Error is prejudicial when, in all probability[,] it produced some effect upon the final result and affected rights of the party assigning it." *Id.* (internal quotation marks omitted).

[¶57.]        In this case, the assumed error was not prejudicial because there is no question that the jury would have returned the same verdict without the kinetic energy evidence. The defendant admitted that she was driving the 2001 Dodge Intrepid the wrong way on Interstate 229 at night while under the influence of alcohol and marijuana. She even admitted that she was guilty of vehicular homicide.[7] Additionally, numerous witnesses testified to the high impact, highway speed, head-on collision. The prosecutor argued to the jury that death or serious bodily harm was likely because the defendant was operating her vehicle the wrong way on the interstate with marijuana and three times the legal limit of alcohol in her blood (BAC .225 %). The prosecutor then specifically informed the jury that they did not need to consider the one testimonial reference to handguns made during the six-day trial. The prosecutor told the jury that the "rest of the evidence certainly informs you [the jury] that [the vehicle was] a dangerous weapon" by the

---

7.    The defendant did not testify. However, the defense made these admissions in opening and closing statements. By conceding that she was guilty of vehicular homicide, the defendant conceded that she was:

> [a] person who, while under the influence of alcohol, drugs, or substances in a manner and to a degree prohibited by § 32-23-1, without design to effect death, operate[d] or [drove] a vehicle of any kind in a negligent manner and thereby cause[d] the death of another person, including an unborn child[.]

See SDCL 22-16-41.

manner in which it was used. The prosecutor asked the jurors to simply use their common sense to determine whether a 3,100 pound vehicle, operated the wrong way on the interstate at night by an impaired driver, was something that was likely to cause death or serious bodily harm.[8] The defendant offered no evidence to dispute this argument.

[¶58.] The Court offers two reasons why it believes the kinetic energy evidence affected the jury's verdict. The Court first merely reiterates its view that Officer Crozier's testimony was not specific to the manner in which the defendant drove her vehicle. *See supra* ¶ 33. But as previously demonstrated, this view is unsupportable under the record in this case. Numerous witnesses to the accident confirmed that Officer Crozier's calculations were related to the manner in which the defendant was actually driving. The Court also concludes the verdict would have been different because an expert witness presented the kinetic energy evidence. In the Court's view, this left the jury "with virtually no decision to make other than to conclude that [the defendant] used her vehicle as a dangerous weapon." *Supra* ¶ 35. This of course ignores the prosecutor's specific direction to the jury that it could determine the "likely to cause death or serious bodily harm" question based on the jury's common sense without the use of the kinetic energy evidence. The Court also ignores the fact that the circuit court specifically instructed the jury "[y]ou are not bound to accept an expert's opinion as conclusive,

---

8. The Court incorrectly asserts that the State conceded "questionable relevanc[y]" of Officer Crozier's testimony. *See supra* ¶ 32. The State merely argued to the jury that the first-degree manslaughter by use of a dangerous weapon charge was sustainable with or without the handgun comparison.

but should give to it the weight to which you find it to be entitled. You may disregard any such opinion if you find it to be unreasonable."

[¶59.]     Under the extreme and undisputed facts of this case, all reasonable jurors would have found that Kvasnicka, driving her motor vehicle at highway speeds the wrong way on an interstate highway at night while incapacitated by alcohol and marijuana, was likely to cause an accident resulting in death or serious bodily harm. Therefore, all reasonable jurors would have found that Kvasnicka was using her vehicle as what our law defines as a dangerous weapon. Consequently, even if the circuit court abused its discretion in allowing the kinetic energy evidence, the error could not have affected the verdict, and this conviction should be affirmed.

[¶60.]     GILBERTSON, Chief Justice, joins this dissent.